Aaron **LIBOW**; John Carmesin; Vicki Carmesin, as assignees of William Boak, Plaintiffs—Appellants,

v.

**FULLERTON & COMPANY, INC.,** Defendant—Appellee.

No. 00–17416.

D.C. No. CV–00–00056–CW.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2002.

Decided April 17, 2002.

Before THOMPSON, W. FLETCHER and BERZON, Circuit Judges.

## MEMORANDUM *

Aaron Libow and John and Vicki Carmesin ("Appellants") appeal the district court's summary judgment in their diversity action. Appellants allege that under California law, Fullerton & Co. ("Fullerton") was negligent in choosing insurance coverage for its insured, William Boak, who injured Appellants while cleaning a firearm. In a state court action against Boak, Appellants obtained a judgment that exceeded his insurance limits. In the present action, as assignees of Boak, they allege that Fullerton agent Peter Opton was negligent in his selection of Boak's coverage. The district court granted summary judgment against Appellants, and we affirm.

### I

As an initial matter, the parties dispute whether Boak had a complete claim to assign to Libow and the Carmesins. Fullerton contends that, because Boak entered into a settlement agreement with Libow and the Carmesins ensuring that he would never have to pay the judgment against him, he suffered no damages as a result of Fullerton's alleged negligence and thus did not have a complete negligence claim to assign to Appellants. We disagree.

The general rule of assignability, set forth in the California Civil Code, is that "[a] thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." Cal. Civ.Code § 954. California courts have long recognized the "general rule permitting the insured, without jeop-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.·

ardizing the enforceability of his or her claim, to assign it in exchange for a covenant not to execute." *Xebec Development Partners, Ltd. v. Nat'l Union Fire Ins. Co.*, 12 Cal.App.4th 501, 15 Cal.Rptr.2d 726, 744 (1993). While not required to pay a judgment, Boak "was left ... with a judgment against him that could have collateral adverse effects in several respects, including on his future credit." *Consolidated Am. Ins. Co. v. Mike Soper Marine Servs.*, 951 F.2d 186 (9th Cir.1991) (citing *Critz v. Farmers Ins. Group*, 230 Cal. App.2d 788, 41 Cal.Rptr. 401, 410 (1964) (a covenant not to execute is not a release and, therefore, did not blot out the personal judgment against the insured nor extinguish his claim against the insurance company)). Because his "interests remain at risk notwithstanding the covenant not to execute," *id.*, Boak sustained damages for purposes of assignment.

Further, evidence was presented that Boak paid, out of his own pocket, legal expenses to explore bankruptcy options before the settlement agreement was entered—expenses that certainly would be considered damages resulting from Fullerton's breach if Fullerton and its agent were found to have a duty to procure greater coverage for the Boaks. Finally, and most significantly, Fullerton's argument that Boak incurred no damage because the settlement agreement absolved him of any potential judgment is a logical fallacy. It is true that Libow and the Carmesins agreed "not to execute any portion of the judgments against Boak's personal assets," but they did so only in exchange for the assignment of the negligence claim. Thus, Fullerton is in essence arguing that Boak has no claim to assign only because he has opted to assign it.

## II

In support of their argument that Opton owed a duty to select reasonable liability limits for Boak, Appellants emphasize the close relationship between Opton and Boak. Opton was the agent for Boak and his wife, Betty Boak, for more than 50 years. During this time, he made approximately annual visits to their home and business to discuss insurance needs and make recommendations. The Boaks and Opton considered each other to be personal friends. Neither William nor Betty Boak had expertise in insurance, and Betty Boak, who bore primary responsibility for keeping the books of the Boaks' logging company and for handling issues of personal and business insurance, said that the Boaks bought nearly all of their insurance from Opton and relied upon him as their "sole source of advice on insurance matters." She said Opton never represented himself as an expert in personal insurance, but said Opton would often make "recommendations" regarding kinds of insurance. "[I]f Peter recommended it, we went along with it. If he didn't, we didn't." The Boaks provided Opton with their business and personal financial statements, and he was aware that the couple had achieved significant financial success. Opton sold the Boaks the homeowners policy that is the center of the present dispute. Neither Opton nor Betty Boak could specifically recall what role Opton played in determining the policy's limit of $300,000. When the accident with the gun occurred, the Boaks knew what that liability limit was, and Mrs. Boak testified that she had thought the amount was adequate. She said she never specifically asked whether such coverage was sufficient and never requested that Opton raise the liability limits.

The district court granted summary judgment in favor of Fullerton, holding that under California law, an insurance agent generally owes no duty to advise an

insured on specific insurance matters such as the sufficiency of policy limits or potential additional coverage, and that the Boaks' relationship with Opton did not fit within any of the exceptions to this general rule as set forth in *Fitzpatrick v. Hayes,* 57 Cal.App.4th 916, 927, 67 Cal.Rptr.2d 445 (Cal.Ct.App.1997); *see also Jones v. Grewe,* 189 Cal.App.3d 950, 234 Cal.Rptr. 717 (Cal.Ct.App.1987).

As the district court correctly noted, the parties in this case agree that Opton never misrepresented the nature, extent or scope of the coverage provided, that the Boaks never requested additional coverage, and that Opton never expressly agreed to assume any additional duty. Likewise, it cannot be said that Opton "assume[d] an additional duty ... by 'holding himself out' as having expertise in a given field of insurance being sought by [the Boaks]," specifically, the field of personal insurance.

A number of the facts that Appellants set forth as evidencing this "holding out" are easily rejected under the plain holdings of *Jones* and *Fitzpatrick.* Most notably, the *Fitzpatrick* court specifically declined to expand the duties of insurance agents because of (1) a longstanding relationship between the agent and his clients; (2) the generally superior knowledge of the agent regarding coverages; and/or (3) the agent's review of the policies issued. *Fitzpatrick,* 57 Cal.App.4th at 929, 67 Cal. Rptr.2d 445. Likewise, Appellants' argument that a customer brochure, which discussed the need for umbrella insurance and urged clients to contact the office if they would like more information about it, constituted evidence of a "holding out" fails under *Fitzpatrick. See* 57 Cal. App.4th at 929, 67 Cal.Rptr.2d 445 (rejecting as "far from a 'holding out' of special expertise" a brochure that "suggest[ed] that the insured ask himself or herself—and perhaps then the agent—about additional insurance needs").

Significantly, *Fitzpatrick* held that, in order for a "holding out" to give rise to an additional duty on the part of the agent, the agent must "hold[ ] himself out as having expertise *in a given field of insurance being sought by the insured." Fitzpatrick,* 57 Cal.App.4th at 927, 67 Cal.Rptr.2d 445 (emphasis added). The case it cited for this proposition, *Kurtz, Richard, Wilson & Co. v. Insurance Communicators Marketing Corp.,* 12 Cal.App.4th 1249, 16 Cal. Rptr.2d 259 (1993), involved defendants who held themselves out as experts in a very specific area of employee benefits (Medicare provisions of the Tax Equity and Fiscal Responsibility Act of 1982). *Id.* at 1256, 16 Cal.Rptr.2d 259. *Paper Savers Inc. v. Nasca,* 51 Cal.App.4th 1090, 59 Cal.Rptr.2d 547 (1996), the only California case Appellants cite for the notion that something less than a holding out of specific expertise will suffice to trigger this greater duty, was itself a case of misrepresentation by an insurer, and was cited in *Fitzpatrick* as an example of that exception, and not the "holding out" exception. *See* 51 Cal.App.4th at 1096–97, 59 Cal. Rptr.2d 547; *Fitzpatrick,* 57 Cal.App.4th at 927, 67 Cal.Rptr.2d 445. Opton never represented himself as an expert in personal insurance, and thus cannot be said to have assumed an additional duty under *Fitzpatrick.*

Appellants' argument that a "voluntary undertaking" by Opton gave rise to the duty to procure better coverage is merely another way of stating that the insurer assumed an additional duty. *See Jones,* 189 Cal.App.3d at 957, 234 Cal.Rptr. 717. The *Fitzpatrick* court, having thoroughly considered *Jones,* made clear that an insurer does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage

and that this rule changes "when—but only when—" one of the three exceptions comes into play. 57 Cal.App.4th at 927, 67 Cal.Rptr.2d 445. As discussed above, none is applicable here.

Accordingly, the grant of summary judgment in favor of Fullerton is AFFIRMED.

* The Honorable Roger L. Hunt, United States District Judge for the District of Nevada, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.