# IN THE SUPREME COURT OF IOWA

No. 08–1635

Filed February 4, 2011

**TIMOTHY L. MERRIAM,** An Individual; **JUSTINE MERRIAM,** Both Individually and as Next Friend of CHRISTOPHER MERRIAM, A Minor, KAYLA MERRIAM, A Minor, and COLLIN MERRIAM, A Minor,

Appellants,

vs.

**FARM BUREAU INSURANCE,** A Corporation and/or **FARM BUREAU INSURANCE SERVICES,** A Corporation; and **STEVEN C. STONEHOCKER,** An Individual,

Appellees.

_____

Appeal from the Iowa District Court for Polk County, Scott D. Rosenberg, Judge.

Plaintiffs appeal dismissal of their negligence claim against an insurance agent and the insurance companies represented by the agent. **AFFIRMED.**

Marc A. Humphrey, Urbandale, and Alan O. Olson, Des Moines, for appellants.

Brian L. Campbell of Whitfield & Eddy, PLC, Des Moines, for appellees.

**CADY, Chief Justice.**

The plaintiffs, Timothy L. Merriam and Justine Merriam, individually and as next best friends to minors Christopher Merriam, Kayla Merriam, and Collin Merriam, brought this action against Steven Stonehocker, their insurance agent, alleging Stonehocker breached his duty of care to act as a reasonably prudent insurance agent when he failed to advise and recommend that Timothy Merriam, a self-employed over-the-road truck driver, procure self-employment workers' compensation insurance. In addition, the plaintiffs contend defendants Farm Bureau Insurance and Farm Bureau Insurance Services (collectively Farm Bureau) are vicariously liable for the actions of Stonehocker, an independent contractor with Farm Bureau. The district court granted the defendants' motion for summary judgment, holding the evidence established Stonehocker used reasonable care, diligence, and judgment in procuring the insurance requested by the Merriams and that, as a matter of law, there was no genuine issue of material fact for trial. On appeal, we affirm the decision of the district court.

## I. Background Facts and Proceedings.

The following facts are undisputed. In 1998 or 1999, Timothy Merriam became an independent over-the-road truck driver for Landstar Ranger. As an owner operator, he was self-employed. Prior to that time, Merriam had always driven a truck as an employee, and any workers' compensation insurance coverage was handled by his employer.

In August 2004, Steven Stonehocker began selling Farm Bureau insurance products as an independent contractor. Upon obtaining this position, Stonehocker was assigned the Merriams as clients, and it was his responsibility to service the account. At the time he was assigned the account, Farm Bureau insured the Merriams' primary residence.

In early 2005, Justine Merriam contacted Stonehocker about insuring a second residence the Merriams were purchasing for Timothy's mother. The Merriams and Stonehocker had never before met. In March 2005, Stonehocker met with the Merriams at their residence to discuss their request for additional coverage. During this initial meeting, Stonehocker suggested the Merriams consider insuring their personal vehicles with Farm Bureau. Their personal vehicles were currently insured through a different insurance company. Stonehocker explained Farm Bureau had a package policy that might be able to provide a better rate and offered to obtain a quote. At the same time, the Merriams inquired about obtaining additional coverage on several other items. The Merriams indicated they were interested in obtaining insurance on their horses, and Stonehocker agreed to obtain a quote for them. They also asked Stonehocker whether their current homeowner's policy covered Timothy's guns. When he informed them that it did not, they requested Stonehocker obtain a quote on insuring the guns. The Merriams also asked Stonehocker to add their new garage and chicken coop onto their homeowner's insurance policy. Finally, the Merriams inquired into obtaining a life insurance policy on Timothy's mother.

During this meeting, Stonehocker was aware that Merriam was a self-employed over-the-road truck driver. Justine also informed Stonehocker that Timothy "had a million dollar policy which applied if he was killed in his truck." There was, however, no discussion of workers' compensation coverage or of any insurance coverage for Timothy if he was injured on the job.

Only a few weeks later, on March 29, 2005, Timothy was at his home in Boone, Iowa. While on duty for work, he severely injured his arm when, during the process of patching the driveway where he parked

his work truck, the dump truck he was operating malfunctioned and crushed his left arm.

Timothy did not have workers' compensation coverage through Landstar Ranger. The Merriams allege Stonehocker was negligent in failing to advise them that, as a self-employed over-the-road truck driver, Timothy had no workers' compensation insurance unless he purchased the additional coverage himself. They claimed Stonehocker was in a position of superior knowledge pertaining to available insurance products and was negligent for failing to initiate a conversation with them regarding this issue. The Merriams allege Farm Bureau was vicariously liable for Stonehocker's inaction because he works as its agent.

## II. Scope of Review.

Rulings on motions for summary judgment are reviewed for the correction of errors at law. *Langwith v. Am. Nat'l Gen. Ins. Co.*, 793 N.W.2d 215, 218 (Iowa 2010). " 'To obtain a grant of summary judgment on some issue in an action, the moving party must affirmatively establish the existence of undisputed facts entitling that party to a particular result under controlling law.' " *Baker v. City of Iowa City*, 750 N.W.2d 93, 97 (Iowa 2008) (quoting *Interstate Power Co. v. Ins. Co. of N. Am.*, 603 N.W.2d 751, 756 (Iowa 1999)); *see also* Iowa R. Civ. P. 1.981(3) (authorizing summary judgment when "there is no genuine issue as to any material fact," and "the moving party is entitled to a judgment as a matter of law"). In reviewing a district court's determination that the defendants met their burden under this standard, "we view the evidence in a light most favorable to the nonmoving party." *Langwith*, 793 N.W.2d at 218.

### III. Prior Precedent.

The primary issue in this case is whether Stonehocker had an affirmative duty to inquire or advise the Merriams on Timothy's need for self-employed workers' compensation insurance coverage. We recently discussed the scope of the duty owed by an insurance agent to his client in *Langwith*. In *Langwith*, we noted the import of our decisions in two earlier cases

> was to limit an insurance agent's obligation to procurement of the coverage requested by the client, relieving the agent of any duty to advise his client of the kinds and amounts of insurance that would protect his client's insurable interests unless there was evidence of an expanded agency agreement.

*Langwith*, 793 N.W.2d at 221; *see also Sandbulte v. Farm Bureau Mut. Ins. Co.*, 343 N.W.2d 457 (Iowa 1984); *Collegiate Mfg. Co. v. McDowell's Agency, Inc.*, 200 N.W.2d 854 (Iowa 1972). We further noted that in *Sandbulte* we narrowly circumscribed the circumstances under which an expanded agency agreement could arise to those situations when " 'the [insurance] agent holds himself out as an insurance specialist, consultant or counselor and is receiving compensation for consultation and advice apart from premiums paid by the insured [principal].' " *Langwith*, 793N.W.2d at 219 (quoting *Sandbulte*, 343 N.W.2d at 464).

Upon further reflection, however, we concluded "the general principles governing agency relationships [require] a more flexible method of determining [whether] the undertaking of an insurance agent is appropriate." *Id.* We noted that, under these principles, " '[a]n agent has a duty to act in accordance with the express and implied terms of any contract between the agent and principal.' " *Id.* (quoting Restatement (Third) of Agency § 8.07, at 334 (2006)). We further held that "it is for the fact finder to determine, based on a consideration of all

the circumstances, the agreement of the parties with respect to the service to be rendered by the insurance agent." *Id.* (citing *Fowler v. Berry Seed Co.*, 248 Iowa 1158, 1165, 84 N.W.2d 412, 416 (1957)).

> Some of the circumstances that may be considered by the fact finder in determining the undertaking of the insurance agent include the nature and content of the discussions between the agent and the client; the prior dealings of the parties, if any; the knowledge and sophistication of the client; whether the agent holds himself out as an insurance specialist, consultant, or counselor; and whether the agent receives compensation for additional or specialized services.

*Id.* (citing *Fitzpatrick v. Hayes*, 67 Cal Rptr. 2d 445, 452 (Ct. App. 1997)). Finally, we held that "[t]he client bears the burden of proving an agreement to render services beyond the general duty to obtain the coverage requested." *Id.*

### IV. Application of Summary Judgment Standard.

Viewing the record in the light most favorable to the plaintiffs, we now consider whether there are facts that would support a finding of an agreement between the parties, interpreted in light of the circumstances under which it was made, that obligated Stonehocker to inquire and advise the Merriams on Timothy's need for self-employed workers' compensation insurance protection.

A review of the summary judgment record shows that, at the time immediately prior to Timothy's accident, the relationship between Stonehocker and the Merriams had been one of short duration. Stonehocker had started employment with Farm Bureau in August 2004. At that time, the only business the Merriams had with Farm Bureau was an insurance policy on their primary residence, obtained through another Farm Bureau agent. Their other insurance needs, including coverage on personal vehicles, health insurance, life insurance, and insurance on Timothy's over-the-road truck were being serviced by other

companies. Although Stonehocker had been assigned to handle the Merriams' insurance account, he did not have any contact with the insureds until early 2005 when Justine called him to inquire about coverage for a second residence.

The main focus of their initial in-person meeting in March 2005 was property insurance coverage. The Merriams inquired about additional coverage on a second residence, outbuildings, animals, and guns. In addition, they also asked about a life insurance policy for Timothy's mother. In addressing these needs, Stonehocker testified in his deposition that he inquired whether the Merriams would be interested in getting a quote on their personal vehicles to take advantage of a potentially better rate through Farm Bureau's packaging of residential and vehicle insurance products. The Merriams consented, and Stonehocker was subsequently able to procure additional coverage for the Merriams on the second residence, many of their personal vehicles, garage addition, animals, and outbuildings.[1]

In his deposition, Stonehocker acknowledged that he knew Timothy was a self-employed truck driver. He testified this information was essential in order to provide an accurate quote. Specifically, Stonehocker testified:

> When you're rating vehicles, you have to find out what the occupation is, because different ratings apply to where [the insureds] work and how far it takes to get there. And so that's as far as the conversation ever went. He told me he was a truck driver, and I knew he didn't commute with these

---

[1]Stonehocker was not asked to obtain a quote on the dump truck involved in the accident that severely injured Timothy, and the truck was not covered under any insurance policy. Due to health issues, Farm Bureau was unable to provide life insurance coverage for Timothy's mother. It is unclear from the record whether the plaintiffs obtained insurance coverage for their guns. They were, however, able to obtain liability coverage on the horses.

> specific vehicles. That was the only information I was asking.

Stonehocker was also advised by Justine that Timothy had coverage of a million dollars if he were killed in his truck.

The Merriams maintain Stonehocker's awareness of Timothy's self-employment status and his life insurance policy, combined with the insurance agent's unsolicited recommendation for other insurance coverage, supports a conclusion that Stonehocker, a licensed agent with more knowledge than the plaintiffs, was holding himself out as an insurance specialist, thus enlarging his duty to make recommendations to the Merriams regarding workers' compensation coverage. We do not agree.

The Merriams made no specific inquiry with respect to self-employed workers' compensation insurance and did not expressly or impliedly seek Stonehocker's assistance in assessing any of their insurance needs other than those specifically requested. To the extent Stonehocker made suggestions regarding personal vehicle coverage, the record establishes he did so only in an effort to obtain a more favorable rate for the property the plaintiffs sought to insure, the residences. Moreover, there was no evidence of any long-standing relationship between the parties that would support an implied agreement to expand Stonehocker's duty to include assessment of the Merriams' other insurance needs. There was no evidence Stonehocker advised the Merriams that he was an insurance specialist, and he did not offer to consult with them on any additional insurance needs. Finally, aside from the typical commission, Stonehocker never received any additional compensation from the insurance products he sold the Merriams. *See id.* at 223 (finding that, in the "absence of circumstances indicating the insurance agent has assumed a duty beyond the procurement of the

coverage requested by the client, the insurance agent has no obligation to advise a client regarding additional coverage or risk management.").

The plaintiffs contend Stonehocker's knowledge of Timothy's self-employed status and million dollar life insurance policy was sufficient to trigger a duty of inquiry on Stonehocker's part. The fact that Stonehocker was a trained and licensed insurance agent with arguably "superior knowledge as to what insurance products someone in [Timothy's] position would require to be adequately protected from injury or loss" cannot be the basis to find an implied agreement to expand Stonehocker's duty. If that were the case, then every trained and licensed insurance agent would have a duty to provide an assessment of all of an insureds' insurance needs, whether requested or not. As previously discussed, we have never held this to be the law in this state. Under the principles set forth in *Langwith*, the plaintiffs have failed to establish a genuine issue of material fact exists that there was an expanded agency agreement requiring Stonehocker to advise the plaintiffs regarding self-employment workers' compensation insurance for Timothy. Because Stonehocker is not liable to the plaintiffs, Farm Bureau cannot be vicariously liable. The district court's ruling granting the defendants' motion for summary judgment is affirmed.[2]

**AFFIRMED.**

---

[2]In their appeal, the Merriams also assert the defendants owed them a fiduciary duty. This issue was not ruled on by the district court, and the plaintiffs did not file a motion to enlarge the findings of fact or conclusions of law. *Meier v. Senecaut,* 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal."). Therefore, it is not preserved for our review. However, even if properly preserved, we conclude the plaintiffs have failed to present a genuine issue of material fact that would support an existence of a fiduciary duty. *See Kurth v. Van Horn,* 380 N.W.2d 693, 695 (Iowa 1986) (" 'A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters *within the scope of the relation.*' " (emphasis added) (quoting Restatement (Second) of Torts § 874, cmt. *a,* at 300 (1979))).