[No. B056950. Second Dist., Div. Four. Jan. 27, 1993.]

KURTZ, RICHARDS, WILSON & CO., INC., Cross-complainant and Appellant, v.
INSURANCE COMMUNICATORS MARKETING CORPORATION et al., Cross-defendants and Respondents.

1252

---

## COUNSEL

Pillsbury Madison & Sutro, Matthew A. Schumacher, Teri L. Paul and John Y. Liu for Cross-complainant and Appellant.

Hart, King & Coldren and Michael J. Schroeder for Cross-defendants and Respondents.

---

## OPINION

**EPSTEIN, J.**—Kurtz, Richards, Wilson & Co., Inc. (KRW) appeals from a judgment that it take nothing on its cross-complaint against respondents, entered after a demurrer was sustained without leave to amend as to two causes of action and summary judgment was granted as to the remaining cause of action. We reverse the judgment and remand the case to the trial court with directions to sustain the demurrer with leave to amend and to deny the motion for summary judgment.

### FACTUAL AND PROCEDURAL SUMMARY[1]

In 1985, as part of its search for group medical, life, and accident insurance for its employees, KRW contacted respondents Insurance Communicators Marketing Corporation (ICMC) and William Hoge, ICMC president. Through them, KRW obtained a policy from Union Central Life Insurance Company (Union). KRW's officers and employees were not knowledgeable in the field of medical, life, and accident insurance, and

---

[1]This statement of facts is taken from the cross-complaint, the allegations of which are taken as true for purposes of the demurrer (*Serrano* v. *Priest* (1971) 5 Cal.3d 584 [96 Cal.Rptr. 601, 487 P.2d 1241, 41 A.L.R.3d 1187]), and which were not disputed on the motion for summary judgment. That pleading and the briefs use the terms "broker" and "agent" somewhat interchangeably, without reference to the Insurance Code provision that defines "agent" as a person acting for an insurer (Ins. Code, § 31) and defines "broker" as a person who acts or transacts insurance (other than life insurance) "with, but not on behalf of, an insurer." (Ins. Code, § 33.) Case authority also has used the term "agent" as referring to one who acts on behalf of the insured. (See, e.g., *Jones* v. *Grewe* (1987) 189 Cal.App.3d 950, 954 [234 Cal.Rptr. 717].) For purposes of the discussion in this opinion, we, too, use the terms in their generic, rather than their technical, meaning.

throughout the process of obtaining insurance they relied on ICMC and Hoge, who held themselves out as expert brokers and agents in the field. ICMC and Hoge were insurance brokers for Union.

As part of the process of applying for the Union policy, KRW treasurer Howard Wilson signed a "Certification of Non-Applicability of Medicare Provisions of TEFRA to a Group Plan" (the TEFRA certificate) which, according to the complaint, stated "'we believe that our group plan is not subject to the Medicare provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA).'" The Medicare provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA) (42 U.S.C. § 1395y) make a company's private medical insurance primary to Medicare if the company has more than 20 employees.

Before signing the TEFRA certificate, Wilson asked Hoge what it meant. Hoge advised Wilson that KRW was not subject to the Medicare provisions of TEFRA and urged him to sign the certificate. Wilson signed the certificate in reliance on the expertise of ICMC and Hoge.

Also as part of the application process, ICMC and Hoge informed Union that KRW had only 12 employees, although KRW had truthfully informed ICMC and Hoge that KRW had 30 employees.

In 1987, large claims were made against the Union policy due to the serious illness of a KRW employee. Union paid some of the claims, then informed KRW that it was not required to pay for the employee's treatment. Late in 1987, Union cancelled the policy and later demanded that KRW reimburse it for amounts it had paid under the policy. In March 1989, Union sued KRW seeking rescission of the policy, reimbursement for all benefits paid, and punitive damages. Union's claims were based on its contention that KRW's TEFRA certificate was inaccurate, and that KRW had led Union to believe that its policy would be secondary to Medicare coverage.

KRW filed a cross-complaint against Union, ICMC, and Hoge. Its second amended cross-complaint is the charging pleading for purposes of this appeal. Against Union, KRW alleged breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, negligent misrepresentation, and unfair business practices under Business and Professions Code

section 17200 et seq. KRW's causes of action against ICMC and Hoge were for fraud, negligent misrepresentation, and negligence.[2]

KRW alleged that it had been damaged "in that it has lost the insurance protection it paid for; its officers and employees have been forced to expend time and effort searching for new insurance and defending KRW against Union's action; its officers, including Howard Wilson, have been harassed and, in Wilson's case, sued; it has been forced to incur legal costs and other expenses in connection with this action; its creditworthiness has been injured; it has been exposed to potential liability in this action; and in other ways has suffered both general and special damages."

In the actions between KRW and Union, summary judgments were granted against each party as plaintiff. KRW's summary judgment apparently was granted on the ground that Union's lawsuit was barred by an incontestability clause in the policy. Union's motion was granted on the basis that the Employee Retirement Income Security Act of 1974, 29 United States Code section 1001 et seq. (ERISA) preempted the action.

ICMC and Hoge demurred to all causes of action in KRW's cross-action against them. The demurrer was sustained as to each cause of action except that for fraud. Later, the trial court granted a motion for summary judgment as to the fraud cause of action, and entered a judgment that KRW take nothing on its cross-complaint.

### DISCUSSION

### I

"In reviewing the sufficiency of a complaint against a general demurrer, we are guided by long-settled rules. 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . .' (*Serrano* v. *Priest*[, *supra*,] 5 Cal.3d 584, 591 . . . .) Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. (*Speegle* v. *Board of Fire Underwriters* (1946) 29 Cal.2d 34, 42 . . . .) When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action. (See *Hill* v. *Miller* (1966) 64 Cal.2d 757, 759 . . . .)" (*Blank* v. *Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d

---

[2]KRW also sued ICMC and Hoge for indemnity for any amounts KRW was held liable to pay Union. ICMC and Hoge's demurrer to those claims was sustained, and these indemnity claims are now moot, since the order of dismissal after demurrer has become final.

58].) Tested by these standards, we find that KRW's cross-complaint states causes of action against both ICMC and Hoge for negligence and negligent misrepresentation.

The demurrer challenged the sufficiency of the allegations of duty and proximate cause. As to the claims against Hoge, whom respondents described as "merely the president of ICMC," the supporting papers for the demurrer argued that the cross-complaint was fatally unclear as to the wrongdoing attributed to Hoge as an individual.

On the element of duty, respondents argued that KRW had not and could not allege that ICMC or Hoge had breached any duty to KRW, because an insurance agent who is known to the insured to be an agent of the insurance company has no duty to the insured, but only to the insurer. Even if that were a correct statement of the law, the demurrer was improperly granted, since the complaint does not allege that the relationship of ICMC and Hoge to Union was disclosed to KRW, but only that it existed. More importantly, it is not a correct statement of the law.

At a minimum, an insurance agent has a duty to use reasonable care, diligence, and judgment in procuring the insurance requested by its client. An agent may assume additional duties by an agreement or by holding himself or herself out as having specific expertise. (*Jones* v. *Grewe, supra,* 189 Cal.App.3d at p. 954.) These duties do not disappear because the agent is also an agent for an insurer. Dual agencies are not uncommon, and do not negate the agent's duty to the client. (See *Westrick* v. *State Farm Insurance* (1982) 137 Cal.App.3d 685 [187 Cal.Rptr. 214] and *Greenfield* v. *Insurance Inc.* (1971) 19 Cal.App.3d 803 [97 Cal.Rptr. 164] [agents of the insurer held to have duty of care to the insured]; 16 Appleman, Insurance Law and Practice (1981) § 8736, pp. 411-412; and 16A Appleman, *supra,* § 8841, pp. 180, 185.)

KRW's cross-complaint alleges that ICMC and Hoge were agents for Union, but it also alleges facts that if true would establish that they entered into a relationship with KRW which gave rise to a duty of care, including a special duty assumed when they held themselves out as experts on TEFRA.

*Lippert* v. *Bailey* (1966) 241 Cal.App.2d 376 [50 Cal.Rptr. 478], a case cited by ICMC and Hoge in support of their claim that they owed no duty to KRW, is in accord. That case holds that an insurance agent's liability for negligence in procuring insurance is dependent on the disclosure of any agency relationship with the insurer. Where the agent contracts in the name

of the insurer and does not exceed that authority, the insurer is liable, and not the agent. Here, as in *Lippert,* a dual agency is alleged, and here, as in *Lippert,* the existence of a dual agency is a question for the trier of fact. (*Id.* at pp. 382-383.) If a dual agency exists, the law does not foreclose recovery by the insured.

When an insurance agent deliberately misrepresents a material fact in an application for insurance presented on behalf of a client who is unaware of the misrepresentation, the agent breaches the duty of reasonable care owed to the client. This is true whether or not those actions might also constitute a breach of a duty owed by the agent to the insurer. The cross-complaint thus states a cause of action for negligence.

■ The cause of action for negligent misrepresentation is based on the allegation that, through negligence, ICMC and Hoge represented to KRW that it was not subject to the Medicare provisions of TEFRA, when in fact KRW was subject to that law. Such a material false statement would violate both the general duty to use reasonable care and judgment in procuring insurance, and the special duty ICMC and Hoge allegedly took on as TEFRA experts. The complaint thus states a cause of action for negligent misrepresentation. (See *Eddy* v. *Sharp* (1988) 199 Cal.App.3d 858, 864 [245 Cal.Rptr. 211].)

■ On the element of proximate cause as to all causes of action alleged, ICMC and Hoge argue that it was not reasonably foreseeable that if they gave false material information to Union in connection with KRW's application for insurance, Union would cancel the policy and bring suit against KRW when it discovered the error. The argument is not credible. Under the Insurance Code, a false representation of material fact is a basis for rescission, and insurers are known to avail themselves of that remedy. (See Ins. Code, §§ 331 and 359; *Thompson* v. *Occidental Life Ins. Co.* (1973) 9 Cal.3d 904, 916 [109 Cal.Rptr. 473, 513 P.2d 353].)

ICMC and Hoge point to the allegation in the cross-complaint that Union used the inaccurate information in the application to "create a pretense" for cancelling the policy, and claim that they cannot be expected to have foreseen that Union would use the misrepresentation in that way. KRW did contend that it was wrongful for Union to rescind the policy, in part because respondents, as Union's agents, knew the truth of KRW's TEFRA status. But the cross-complaint clearly alleges that misrepresentations were made to Union, and it was entirely foreseeable that Union would seek to rescind the policy on that basis, even if the attempt was not ultimately

successful.[3] KRW's challenge to the legality of its insurer's actions does not insulate respondents from liability.

■ Finally, as to the claims against Hoge, respondents contend that the cross-complaint is unclear in its allegations of wrongdoing by him personally.

The complaint alleges that Hoge personally committed negligent misrepresentation by making misrepresentations to KRW's treasurer regarding KRW's TEFRA status, and that he was personally negligent in providing untrue information about KRW to Union. ■ "Directors are liable to third persons injured by their own tortious conduct regardless of whether they acted on behalf of the corporation and regardless of whether the corporation is also liable." (*Frances T.* v. *Village Green Owners Association* (1986) 42 Cal.3d 490, 504 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447].) ■ The allegations in KRW's cross-complaint are sufficiently specific to apprise respondents of the issues they were asked to meet, and the demurrer should have been overruled. (See *Williams* v. *Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 139, fn. 2 [229 Cal.Rptr. 605].)

## II

■ Respondents' motion for summary judgment was based on their claim that the fraud cause of action was preempted by ERISA.[4] On appeal, respondents argue that the entire cross-complaint is preempted. Since that argument was not made as to the other causes of action in the trial court, it technically is not before us. In any case, our ruling applies to all causes of action.

■ "ERISA is a comprehensive federal statute designed to promote the interests of employees and their beneficiaries in employee pension and benefit plans. (*Shaw* v. *Delta Air Lines, Inc.* (1983) 463 U.S. 85, 90 . . . ; *Marshall* v. *Bankers Life & Casualty Co.* (1992) 2 Cal.4th 1045, 1050-1051, [10 Cal.Rptr.2d 72, 832 P.2d 573], cert. denied __ U.S. __ [121 L.Ed.2d 537, 113 S.Ct. 601] [hereafter *Marshall*].) ERISA contains safeguards to preclude abuse and frustration of the comprehensive system of federal regulation it establishes. (*Ingersoll-Rand* v. *McClendon* (1990) 498 U.S. 133, 137 [112 L.Ed.2d 474, 482-483, 111 S.Ct. 478] . . . ; accord *Marshall, supra,* 2 Cal.4th at p. 1051.) 'Prominent among these safeguards is an expansive

---

[3]The record before us is not clear on the result of Union's attempt to rescind the policy.

[4]It is undisputed that the Union policy which KRW offered to its employees is covered by ERISA.

preemption provision, found at section 514 of ERISA (29 U.S.C. § 1144[(a)] [Citations]. (*Marshall, supra,* 2 Cal.4th at p. 1051.)' " (*Southern Cal. Ch. of Associated Builders etc. Com.* v. *California Apprenticeship Council* (1992) 4 Cal.4th 422, 435 [14 Cal.Rptr.2d 491, 841 P.2d 1011].)

The preemption provision applies to "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." (29 U.S.C. § 1144(a).) "[A] law 'relate[s] to' a covered employee benefit plan for purposes of [ERISA] 'if it has a connection with or reference to such a plan.' [Citations.]" (*District of Columbia* v. *Greater Washington Board of Trade* (1992) 506 U.S. ___ [121 L.Ed.2d 513, 113 S.Ct. 580].) ERISA's preemption provision is "deliberately expansive" and is designed to make pension plan regulation an exclusively federal concern. (*Pilot Life Ins. Co.* v. *Dedeaux* (1987) 481 U.S. 41, 46 [95 L.Ed.2d 39, 46, 107 S.Ct. 1549].) It is not, however, all encompassing. "Some state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." (*Shaw* v. *Delta Air Lines, Inc., supra,* 463 U.S. at p. 100, fn. 21 [77 L.Ed.2d at p. 503].)

 Only a few cases have examined the question of ERISA preemption of claims against insurance agents. Those cases reach inconsistent results, and none is squarely on the facts with our case, since none considers claims against an agent acting for an insured, the situation presented here.

One of those cases, *Perkins* v. *Time Ins. Co.* (5th Cir. 1990) 898 F.2d 470, reviewed the preemption of claims against an independent insurance agent who solicited plaintiffs' participation in an ERISA plan. Plaintiffs alleged that the agent misrepresented plan coverage in order to induce them to give up existing coverage and join the plan, in violation of a state statute. Related claims were brought against the insurer. The Fifth Circuit held that while the claims against the insurer were preempted, "we are not persuaded that this logic should extend to immunize agents from personal liability for their solicitation of potential participants in an ERISA plan prior to its formation." (*Id.* at p. 473.) The court found that the claim "relates to" the plan only indirectly: "[a] state law claim . . . which does not affect the relations among the principal ERISA entities (the employer, the plan fiduciaries, the plan, and the beneficiaries) as such, is not preempted by ERISA." (*Ibid.*)

In *Farlow* v. *Union Cent. Life Ins. Co.* (11th Cir. 1989) 874 F.2d 791, similar claims of violation of state law were brought against insurance agents acting for an insurer and for themselves. Again, related claims were brought against the insurer. *Farlow* applied the 11th Circuit rule that a cause

of action "relates to" an ERISA plan if the conduct giving rise to the claim is not "wholly remote in content" from the plan. The court concluded that the agents' alleged conduct was intertwined with the insurer's refusal to pay benefits, and that the claims were not wholly remote from the ERISA plan and were thus preempted. (*Id.* at p. 794; see also *Belasco* v. *W.K.P. Wilson & Sons, Inc.* (11th Cir. 1987) 833 F.2d 277.)

In *Dearth* v. *Great Republic Life Ins. Co.* (1992) 9 Cal.App.4th 1256 [12 Cal.Rptr.2d 78], the allegation was that the agent, acting for the insurer, improperly filled out the Dearths' application for insurance by omitting mention of Mrs. Dearth's pregnancy, and failed to adequately advise the applicants of the plan's coverage, leaving the eponymous Dearths without the coverage they needed. (*Id.* at pp. 1262-1264.) The Dearths conceded that their claims against the insurer were preempted.

*Dearth* reviewed *Farlow, Belasco,* and *Perkins,* and followed *Farlow,* finding that the agent's alleged conduct was intertwined with the insurer's refusal to pay benefits, and that the conduct had a sufficient connection with the plan so that it related to the plan and was preempted. (9 Cal.App.4th at p. 1282.) The court also reasoned that since the claim would be preempted if brought against the fiduciary, it should be preempted when brought against the agent, who was alleged to have been acting for the fiduciary. (*Id.* at p. 1279.)

We find the *Perkins* case to be most applicable to the facts before us. In *Farlow* and *Dearth,* the insurance agent was alleged to have been acting for the insurer, who, as provider of the ERISA plan, is a principal ERISA entity. Dual agency was not alleged in either case. In *Perkins,* the agent was an independent agent. Here, ICMC and Hoge are sued in their capacity as agents for an employer who sought to make a plan available to its employees. No claims against the insurer remain. All matters involving rescission of the plan, claims handling under the plan, acts of ICMC and Hoge in their capacity as Union's agents, and other ERISA issues were resolved when KRW's claims against Union were dismissed. Like *Perkins,* this case does not concern the relationships between the principal ERISA entities.

Moreover, " '[t]he question of whether a certain state action is preempted by federal law is one of congressional intent. " 'The purpose of Congress is the ultimate touchstone.' " ' [Citations.]" (*Pilot Life Ins. Co.* v. *Dedeaux, supra,* 481 U.S. at p. 45 [95 L.Ed.2d at p. 46].) The United States Supreme Court has determined that in enacting ERISA's preemption provision the purpose of Congress was to protect employers from conflicting and

inconsistent state and local regulation of ERISA plans and to ensure that the administrative practices of such a plan would be governed by only a single set of regulations. (*Fort Halifax Packing Co.* v. *Coyne* (1987) 482 U.S. 1, 9, [96 L.Ed.2d 1, 9, 107 S.Ct. 2211].)

*Provience* v. *Valley Clerks Trust Fund* (1984) 163 Cal.App.3d 249 [209 Cal.Rptr. 276], cited by respondent, does not compel a different result. There, an employee sued the fund, a plan provider, for bad faith, fraud, and intentional infliction of emotional distress. Factually, the fraud claim alleged the misrepresentation of plan benefits by a union business agent, acting on behalf of the fund. (*Id.* at p. 259, fn. 7.) The court reviewed the facts on which the fraud claim was based, and found that, in substance, they alleged misrepresentations in benefit booklets prepared by the fund and distributed by the business agent. The court concluded that the claim was preempted, since ERISA made the content of the booklet immune from state regulation. (*Id.* at p. 259.) *Provience* involves a classic ERISA preemption situation in which a provider is sued for misrepresenting benefits to prospective insured parties. It does not involve, as does our case, a claim that the agent for a prospective insured misrepresented the situation of the client to the insurer.

With a single caveat, it appears that the effect of KRW's claims is too tenuous, peripheral, and remote to support ERISA preemption. Our caveat concerns KRW's damage claim. The cross-complaint includes an assertion that KRW was damaged "in that it has lost the insurance protection it paid for." In its briefs, KRW assures us that it is not seeking to put ICMC and Hoge in the position of an insurer, or to collect plan benefits from them. The distinction is critical.

If KRW were seeking ERISA benefits from ICMC and Hoge, its claims would indeed be preempted. (*Aetna Life Ins. Co.* v. *Borges* (2d Cir. 1989) 869 F.2d 142, 146.) If, however, KRW is not seeking such damages, preemption would further none of the purposes of the ERISA preemption provision. KRW should be permitted to amend its complaint to eliminate this ambiguity by making it clear that it is not seeking such benefits in this action.

We also note that KRW has no apparent remedy against ICMC and Hoge under ERISA. (See 29 U.S.C. § 1132.) Existence of an ERISA remedy is not determinative of preemption. In enacting ERISA's preemption provision, Congress was aware that the broad preemption might create regulatory vacuums. (See *Southern Cal. Ch. of Associated Builders etc. Com.* v. *California Apprenticeship Council*, *supra*, 4 Cal.4th at pp. 445-446.) However, those

gaps in the remedy exist " 'when Congress determines that federal law should govern a broad area to the exclusion of state regulation and chooses not to prohibit the actions formerly prohibited by state law.' " (*Olson* v. *General Dynamics Corp.* (9th Cir. 1991) 960 F.2d 1418, 1423, quoting *Phillips* v. *Amoco Oil Co.* (11th Cir. 1986) 799 F.2d 1464.) Nothing in ERISA suggests a congressional intent to regulate the relationship between an employer and its insurance agent, or that wrongs such as those alleged here should go without a remedy.

We therefore remand this case to the trial court with directions to sustain the demurrer with leave to amend, so that KRW may amend its complaint to clarify the relief it is seeking.

### III

Finally, respondents suggest that the summary judgment should be upheld because appellant did not file a separate statement of disputed and undisputed facts. ▮ While the failure to file such a statement may support the grant of summary judgment (Code Civ. Proc., § 437c, subd. (b)), there is no indication that the trial court made its decision on that ground. Dismissal for failure to file a separate statement is discretionary, and "[t]he exercise of this discretion should not be presumed but should be made to appear in the record." (*Gilbertson* v. *Osman* (1986) 185 Cal.App.3d 308, 315-316 [229 Cal.Rptr. 627].)

#### Disposition

The judgment is reversed, and the case remanded to the trial court with directions to sustain the demurrer with leave to amend and to deny the motion for summary judgment. Each party is to bear its own costs on appeal.

Woods (A. M.), P. J., and Taylor, J.,* concurred.

Respondents' petition for review by the Supreme Court was denied April 22, 1993.

---

*Judge of the Los Angeles Superior Court sitting under assignment by the Chairperson of the Judicial Council.