Filed 11/17/14  Lozano v. Harles CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| DONALD LOZANO et al., | F067638 |
| Plaintiffs and Appellants, | (Super. Ct. No. 648437) |
| v. | |
| JAKE HARLESS et al., | **OPINION** |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Stanislaus County.  Timothy W. Salter, Judge.

Law Offices of Mark S. Nelson, Mark S. Nelson and Angelica Anguiano for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard, Wayte & Carruth, Todd W. Baxter and Dana B. Denno for Defendants and Respondents.

-ooOoo-

Plaintiffs sued their insurer and their insurance agent for negligence in failing to advise them of the availability of higher limits on their uninsured and underinsured motorist coverage, and failing to increase the limits of that coverage at the time and to the extent the agent increased the limits on their automobile liability coverage.  The jury rendered a verdict in favor of plaintiffs, but the trial court granted defendants' motion for

judgment notwithstanding the verdict on the ground an insurance agent does not owe a duty to the insured to advise of the availability of other or greater coverage or to procure any particular coverage in the absence of special circumstances not demonstrated by the evidence at trial. No basis for imposition of such a duty was presented at trial, and we affirm the judgment.

## *FACTUAL AND PROCEDURAL BACKGROUND*[1]

In May 2004, after being trained by State Farm, defendant Jacob Harless took over a State Farm insurance agency and began selling insurance. Plaintiffs were existing clients of the agency. Harless's office began calling existing policyholders and bringing them in for an insurance and financial review. Harless conducted the reviews to get to know the policyholders, review their policies, and determine their insurance needs. On June 28, 2004, plaintiffs met with Harless in his office and discussed their automobile and other insurance. Harless could not recall specific details of that conversation, but he testified his usual practice with automobile insurance was to show the customer the computer screen, which showed the various coverage limits available for different types of coverage, discuss the coverages, and allow the customer to choose the appropriate limits. Plaintiff Esther Lozano[2] testified Harless did not show them information on the computer screen and she did not recall any discussion of uninsured and underinsured motorist (UM/UIM) coverage. Plaintiff Donald Lozano initially testified he recalled very

---

[1] Our statement of facts reflects the facts appearing in the record. Our review in this case was hampered by the appellants' briefs, which included factual statements not supported by any reference to the record, not supported by the portion of the record cited, or not supported by the record at all, in violation of rule 8.204 of the California Rules of Court. (See Cal. Rules of Court, rule 8.204(a)(1)(C) & (a)(2)(C) [requiring the statement of facts in an appellate brief to be "limited to matters in the record" and requiring any reference to matter in the record to be supported "by a citation to the volume and page number of the record where the matter appears"].)

[2] Some of the individuals are referred to by their first names because they share a last name with others involved. This is done for clarity and convenience. No disrespect is intended.

2

little about the meeting, and did not recall any computer screens or discussion of different coverages; he later admitted he did not recall the meeting or any of the discussion at all. As a result of the meeting, plaintiffs increased the bodily injury liability limits on their automobile insurance policies to $250,000 per person and $500,000 per accident.[3] The UM/UIM coverage remained at $30,000 per person and $60,000 per accident.

Harless testified plaintiffs came in to meet with him as part of his general review of policyholders' policies and needs. Esther, however, testified she did not recall Harless calling her to set up an appointment; she recalled plaintiffs met with him because she and Donald had recently married and they wanted to combine their policies and make sure they had sufficient insurance to protect their home. She stated plaintiffs chose the $250,000/$500,000 limits for bodily injury liability coverage because that was what they thought their house was worth; they did not discuss with Harless the value of the house or how much insurance would be needed to protect it. She knew she had $30,000/$60,000 limits on the UM/UIM coverage, but she was not aware she could obtain higher limits. Every six months thereafter, plaintiffs received a declaration sheet reflecting their coverage limits.

On December 7, 2008, plaintiffs were injured in an automobile accident caused by another driver. They recovered $30,000 each from the other driver's insurance, which represented the limits of that driver's liability policy. The costs of their medical care exceeded that amount. Because the other driver's bodily injury liability limits equaled plaintiffs' UM/UIM limits ($30,000/$60,000), plaintiffs had no claim against their own policy's UM/UIM coverage.

Plaintiffs sued State Farm and Harless alleging three causes of action: intentional or negligent misrepresentation, breach of contract, and negligence. During the trial, plaintiffs withdrew or dismissed the misrepresentation cause of action and the breach of

---

[3] Plaintiffs owned multiple vehicles, each with its own policy.

contract cause of action. Only the negligence cause of action went to the jury. It was premised on Harless's failure to inform plaintiffs of the availability of higher limits of UM/UIM coverage, to offer them options for the limits on that coverage, and to procure or advise them to procure UM/UIM coverage with limits equal to the limits on their bodily injury liability coverage. The jury found Harless was negligent and his negligence was a substantial factor in causing plaintiffs' damage; it awarded plaintiffs damages in the amount of their medical bills and Esther's lost wages.

Defendants moved for judgment notwithstanding the verdict. They argued, as they had in a motion for summary judgment and a motion for directed verdict that an insurance agent owes no duty to inform the insured of the availability of, procure, or recommend any particular coverage or level of coverage, in the absence of a specific request from the insured. They also challenged the causation finding, asserting there was no evidence adduced that, had Harless advised plaintiffs of the availability of higher limits for their UM/UIM coverage, plaintiffs would have chosen to purchase coverage with higher limits. Because plaintiffs did not request any specific amount of UM/UIM coverage, and the amount provided satisfied statutory requirements, defendants asserted they owed no duty to advise plaintiffs that they could obtain UM/UIM coverage with limits higher than $30,000/$60,000. The trial court granted the motion and entered judgment in favor of defendants. Plaintiffs appeal.

### DISCUSSION

### I.     Standard of Review

"'A motion for judgment notwithstanding the verdict may be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence in support. [Citation.] [¶] … As in the trial court, the standard of review [on appeal] is whether any substantial evidence— contradicted or uncontradicted—supports the jury's conclusion.' [Citation.]" (*Cabral v.*

4

*Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 770.) Before we can determine whether substantial evidence supports the jury's conclusion that defendants were negligent, that is, that they breached a duty of due care to plaintiffs, we must first determine whether defendants owed a duty of care to plaintiffs. (*Ibid.*) "Duty is a question of law for the court, to be reviewed de novo on appeal. [Citations.]" (*Id.* at pp. 770-771.)

## II. Duty of Insurance Agent

The only cause of action presented at trial was a cause of action for negligence. Plaintiffs' expert testified the applicable standard of care was what a prudent licensed insurance agent would do in similar circumstances. He opined that, in similar circumstances, an insurance agent would provide all the usual automobile insurance coverages, including UM/UIM. To meet his standard of care, an agent would have to determine what the clients' needs were, and educate the clients about their options. Plaintiffs' expert testified it was the custom and practice in the automobile insurance industry to match UM/UIM limits to bodily injury liability limits. He opined that it was illogical and inconsistent with the needs of the insureds to provide more coverage to the public than to the insureds themselves and the occupants of their vehicle, which was what occurred if the liability limits exceeded the UM/UIM limits.

After the jury rendered its verdict in favor of plaintiffs, defendants moved for judgment notwithstanding the verdict, arguing, among other things, that Harless owed no duty to plaintiffs to recommend to them that their UM/UIM limits be higher or match their liability limits, or to educate them about the availability of higher limits on their UM/UIM coverage. In their papers in support of and opposition to the motion for judgment notwithstanding the verdict, both parties relied, at least in part, on *Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916 (*Fitzpatrick*). Feeling bound by *Fitzpatrick*, the trial court granted the motion.

In *Fitzpatrick*, Judith Fitzpatrick was severely injured when she was struck by an automobile; she suffered over $1 million in damages. (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 918.) Her husband witnessed the accident and suffered emotional distress and loss of consortium. The driver had policy limits of $15,000/$30,000, and his insurer paid $15,000 to each plaintiff. The plaintiffs' UM/UIM coverage had a $100,000 limit; the insurer paid Judith the $85,000 difference. The plaintiffs sued their insurer and its agent for negligence for failing to advise of the availability of personal umbrella coverage which would have resulted in greater compensation for Judith's injuries. The trial court granted the defendants' motion for summary judgment, concluding they did not owe the plaintiffs a duty to advise them of the availability of, or to procure, such coverage. (*Ibid*.)

The only issue before the court was whether the insurance agent "had a legal duty to [the plaintiffs] to advise them as to the availability of personal umbrella coverage." (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 920.) The court first reviewed the four cases relied on by the defendants. *Gibson v. Government Employees Ins. Co.* (1984) 162 Cal.App.3d 441 held that an "insurer had no fiduciary duty to advise its insured of the availability of additional or extended coverage." (*Fitzpatrick*, at p. 921.) *Pabitzky v. Frager* (1985) 164 Cal.App.3d 401 rejected the plaintiffs' contention their insurer and its agent had a duty "to advise the plaintiff 'to carry uninsured motorist insurance in an amount greater than the statutory minimum.' [Citation.]" (*Fitzpatrick,* at pp. 921-922.) The *Pabitzky* court stated: "'We know of no duty on the part of an insurance broker to do more than to call the attention of his customer to the availability of the statutory provision and, unless expressly told to omit it, to see that the policy complies with the statute.' [Citation.]" (*Fitzpatrick,* at p. 922.) In *Ahern v. Dillenback* (1991) 1 Cal.App.4th 36 (*Ahern*), the insureds contended their insurer and its agent breached a duty to them by not including certain types of coverage, including UM/UIM, in their policy or advising the insureds of their availability. The *Ahern* court rejected that claim; in the absence of a

special relation between the parties, the defendants did not owe such a duty to the insureds. (*Fitzpatrick*, at p. 923.)

In *Jones v. Grewe* (1987) 189 Cal.App.3d 950 (*Jones*), the owners of an apartment building settled their tenants' personal injury action against them for $1.5 million, then alleged their insurance broker was negligent in not advising them to carry more than $300,000 in liability insurance coverage. The *Jones* court concluded that, "although an insurance agent or broker has a general duty 'to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured,' generally this does not entail any obligation to '"point out to [the insured] the advantages of additional coverage …."'' [Citation.]" (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 922.) The broker could, however, "'assume additional duties by an express agreement or a holding out.' [Citation.]" (*Ibid.*) The facts alleged by the owners—that the owners had purchased insurance from the broker for several years and had followed his advice, and that the broker had assured the owners they had adequate coverage—were insufficient to give rise to a greater duty. (*Ibid.*) The *Jones* court concluded: "'Neither an insurance agent nor anyone else has the ability to accurately forecast the upper limit of any damage award in a negligence action against the insured by a third party. To impose such a duty based on the pleadings in this case would in effect make the agent a blanket insurer for his principal. We fail to see where sound public policy would require the imposition of such a duty upon the agent, unless the latter has by an express agreement or a holding out undertaken that obligation.' [Citation.]" (*Fitzpatrick*, at p. 923.)

The *Fitzpatrick* court then discussed the three cases relied on by the plaintiffs as establishing a duty, none of which involved a claim against the insurer or insurance agent for failing to advise the insureds of the availability of higher limits of coverage: *Westrick v. State Farm Insurance* (1982) 137 Cal.App.3d 685 (*Westrick*); *Free v. Republic Ins. Co.*

(1992) 8 Cal.App.4th 1726 (*Free*); and *Kurtz, Richards, Wilson & Co. v. Insurance Communicators Marketing Corp.* (1993) 12 Cal.App.4th 1249 (*Kurtz*).[4]

The *Fitzpatrick* court also reviewed two cases both parties relied on. In *Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110 (*Desai*), the court distinguished the cases finding the insurance agent owed no duty to the insured: in those cases, "'the insured was suing its insurer for failing to (1) *recommend additional* coverage or (2) *spontaneously procure* unrequested additional coverage for its insured or (3) *advise* that additional coverage was *available*.'" (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 926.) In *Desai*, in contrast, the insured sued the insurer and agent for negligently representing his policy provided 100 percent replacement cost coverage. It was not a case about failure to recommend more coverage, but a case about failure to deliver the agreed upon coverage. (*Fitzpatrick, supra*, at p. 926.) Likewise, *Paper Savers, Inc. v. Nacsa* (1996) 51 Cal.App.4th 1090 (*Nacsa*), was a failure to deliver agreed upon coverage case; the insured alleged the insurance agent misrepresented that the policy he was buying included sufficient replacement cost coverage to replace his business personal property in case of a total loss. (*Fitzpatrick,* at pp. 926-927.)

The *Fitzpatrick* court summarized the general rule as follows: "an insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or

---

**4**     In *Westrick*, there was a jury issue whether conversations between the insured and the insurer's agents amounted to a request for insurance, which would have obligated the agents to respond, so the court reversed the directed verdict in favor of the insurance agent. (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 924.) In *Free*, the insured homeowner had specifically asked his insurance agent several times whether his coverage limits were adequate to rebuild his home if it was destroyed, and the agent had repeatedly assured him they were; "'once [the broker] elected to respond to his inquiries, a special duty arose requiring them to use reasonable care." The uncertainties of a claim against a liability policy were not involved; the home could have been insured based on the value of the building. (*Fitzpatrick,* at p. 925.) In *Kurtz*, an employer seeking group insurance for its employees relied on brokers who held themselves out as experts in the field. The complaint adequately alleged a duty assumed by the brokers by holding themselves out as having special expertise. (*Fitzpatrick, a*t pp. 925-926.)

8

different insurance coverage.… The rule changes, however, when—but only when—one of the following three things happens: (a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided (as in *Free, Desai* and *Nacsa*), (b) there is a request or inquiry by the insured for a particular type or extent of coverage (as in *Westrick*), or (c) the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured (as in *Kurtz*)." (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 927, fn. omitted.)

The plaintiffs in *Fitpatrick* did not assert the first exception applied. As to the second, their evidence showed only that they relied on the agent to advise them about insurance and he led them to believe their coverage was fine. There was no evidence the plaintiffs made any specific inquiry about additional coverage. (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 928.) The plaintiffs admitted they never raised the question of additional UM/UIM coverage or personal umbrella coverage with the agent, and the agent never gave them advice about higher limits or additional UM/UIM coverage. Regarding the third exception, the plaintiffs contended State Farm held the agent out as having special expertise in personal insurance needs, thereby assuming an additional duty to the plaintiffs. Their evidence was a State Farm brochure promoting the desirability of insureds asking for a "'Family Insurance Checkup,'" and the declaration of a former State Farm agent that, if the plaintiffs' agent did not alert them to the need for a personal umbrella policy, he was not acting within the applicable standards of care. (*Id.* at p. 929.) There was no evidence the plaintiffs ever saw or relied on the brochure, and it did not "'hold[] out'" any special expertise; "in very bland terms, it suggest[ed] that the insured ask himself or herself—and perhaps then the agent—about additional insurance needs." (*Ibid.*) The expert declaration purported to define the duty of an insurance agent, but "the responsibility of defining duty in a tort case reposes with the court." (*Ibid.*) Accordingly, the court affirmed the summary judgment in favor of the defendants, which was granted

on the grounds the defendants owed no duty to advise the plaintiffs of the availability of, or to procure, additional UM/UIM coverage, and the defendants did not undertake such a duty. (*Id*. at pp. 920, 930.)

*Jones* and *Fitzpatrick* set out the general rule and the exceptions to it: an insurance agent has a general duty to use reasonable care, diligence, and judgment in procuring the insurance requested by an insured, but this generally does not entail any duty to volunteer information about the availability of additional coverage, to advise the insured to procure additional or different coverage, or to point out to the insured the advantages of additional coverage. An insurance agent may assume a greater duty toward the insured, however, if "(a) the agent misrepresents the nature, extent or scope of the coverage being offered or provided …, (b) there is a request or inquiry by the insured for a particular type or extent of coverage …, or (c) the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured." (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 927; *Jones, supra*, 189 Cal.App.3d at p. 954.)

Plaintiffs' theory of liability at trial was that Harless owed them a general duty of care to educate them about UM/UIM coverage, to advise them of the availability of higher limits of UM/UIM coverage than their policy provided when they first met with Harless, or to automatically match the UM/UIM limits to the increased liability limits plaintiffs selected. In his opening argument, plaintiffs' counsel argued it was the norm in the insurance industry to have matching limits for UM/UIM and liability coverages, but when plaintiffs met with Harless on June 28, 2004, he increased their liability coverage from $30,000/$60,000 to $250,000/$500,000 without making a corresponding increase in their UM/UIM coverage. In his closing argument, plaintiffs' attorney argued Harless did not offer plaintiffs the level limits of coverage he should have, and did not give them the options and information they needed to make coverage choices to fit their needs. Based

10

in part on these arguments, a jury instruction that "[a]n insurance agent is negligent if he fails to use the skill and care that a reasonably careful insurance agent would have used in similar circumstances," and the expert testimony that it is illogical and inconsistent to have higher limits of liability coverage than UM/UIM coverage, the jury found Harless was negligent, and his negligence was a substantial factor in causing plaintiffs' damages.

As set out in *Jones* and *Fitzpatrick*, however, unless an exception applied, Harless had no duty to inform plaintiffs of coverages they did not ask for, inform them of the availability of higher limits for coverages they already had, or procure for them coverage they did not request, such as UM/UIM coverage with increased limits. Defendants moved for judgment notwithstanding the verdict, asserting this lack of duty. In opposition, plaintiffs cited the three exceptions set out in *Fitzpatrick* to the general rule of no liability, and argued the first two exceptions applied. They asserted the jury could have believed Harless misrepresented the nature, extent, or scope of the coverage when he stated it was "good" coverage. Plaintiffs also argued they "made an inquiry and requested particular coverage to protect their home," specifically the increased liability limits of $250,000/$500,000. They argued, based on their expert's testimony, that it was a breach of the standard of care not to match the increased liability limits with an increase in the UM/UIM limits.

On appeal, plaintiffs argue instead that the third exception set out in Fitzpatrick applies. They argue that, by offering his insureds a comprehensive review of their insurance coverages and finances, Harless held himself out as having specialized knowledge of insurance matters. As a result, they conclude, he was subject to an additional duty to plaintiffs, which he breached by failing to advise them of the availability of increased UM/UIM limits.

The first two exceptions set out in *Fitzpatrick* do not apply. The first exception, misrepresentation, was not an issue in the trial court. Plaintiffs withdrew their cause of

11

action for misrepresentation during the trial. No instructions on misrepresentation were given and the jury made no findings regarding any misrepresentations. The misrepresentation exception could not form the basis of a duty of care.

As to the second exception, it was undisputed plaintiffs made no request for or inquiry about the coverage in issue. Plaintiffs' only request was for $250,000/$500,000 limits on bodily injury liability coverage, which Harless provided. They did not request any particular limits on UM/UIM coverage. Plaintiffs testified there was no discussion of their UM/UIM coverage. Thus, there was no evidence that plaintiffs inquired about their UM/UIM coverage or requested any particular limits, which could have given rise to a duty to respond to the inquiry or provide the coverage requested.

The third exception applies when "the agent assumes an additional duty by either express agreement or by 'holding himself out' as having expertise in a given field of insurance being sought by the insured." (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 927.) It involves an agent "holding himself out to be more than an 'ordinary agent.' [Citation.]" (*Nacsa, supra*, 51 Cal.App.4th at p. 1096.) Plaintiffs assert Harless held himself out as having specialized knowledge in insurance matters by calling them and offering them a comprehensive review of their insurance coverages. This contention was not presented at trial. The jury was not instructed on it and made no findings regarding whether Harless made any representations of expertise to plaintiffs or held himself out as an expert in any particular field of insurance. Plaintiffs did not even argue in their opposition to the motion for judgment notwithstanding the verdict that this exception applied.

Generally, "theories not raised in the trial court may not be raised for the first time on appeal." (*McDonald's Corp. v. Board of Supervisors* (1998) 63 Cal.App.4th 612, 618.) "However, a new theory raising a pure question of law on undisputed facts can be raised for the first time on appeal." (*Fort Bragg Unified School Dist. v. Colonial American Casualty & Surety Co*. (2011) 194 Cal.App.4th 891, 907.) Whether Harless

12

owed a duty to plaintiffs because he held himself out to plaintiffs as having specialized knowledge of a particular field of insurance is not a pure question of law on undisputed facts. The facts were disputed. Harless testified in June 2004, his agency was calling in its existing clients for an insurance and financial review; he brought in the clients, to get to know them, see what their situation was, review their existing policies, determine their coverages, and make sure "we are both on the same page." He would go through all of their existing policies, review their coverages, explain how they work, and determine whether anything needed to be adjusted. Plaintiffs were such existing clients.

Esther, however, testified she did not receive a call from Harless or go to his office in response to an offer to review their policies. She testified plaintiffs went to see Harless because they had recently married and they wanted to combine their policies and increase their liability limits. Donald did not testify that he received any call from Harless, that Harless offered to review plaintiffs' insurance policies with them, or that they met with Harless as a result of any such communications. Neither plaintiff testified Harless held himself out as more than an ordinary agent or as having specialized knowledge of any particular field of insurance. Even if we interpret the evidence most favorably to plaintiffs and accept Harless's testimony that his office called its clients, including plaintiffs, and asked them to come in to review their policies, that is not the type of holding out of the agent as an expert in a given field of insurance that would give rise to an additional duty of care.

In *Jones, supra,* 189 Cal.App.3d 950, the court rejected the plaintiffs' holding out theory: "The mere allegation in a complaint, as in this case, that an insured has purchased insurance from an insurance agent for several years and followed his advice on certain insurance matters is insufficient to imply the existence of a greater duty. Such reliance is not at all uncommon when an insuredhas done business with an insurance agency over a period of time." (*Id.* at p. 956.)

13

In *Wallman v. Suddock* (2011) 200 Cal.App.4th 1288, the court concluded the plaintiffs' opposition to the insurance agent's motion for summary judgment had not raised a triable issue of material fact regarding whether the insurance agent had held himself out as an expert in particular insurance matters. (*Id.* at p. 1312.) "The Wallmans' statements that [the agent] 'held himself out to us as an expert in insurance matters, and specifically, for the type of risks our family business encountered' and 'offered to act as our insurance consultant, advising us on our insurance needs' are too conclusory to raise a triable issue of fact. Notably missing from these statements are *what* [the agent] said to give rise to the Wallmans' purported belief that he was an expert in insurance matters. And, under *Jones*, the mere assertion that plaintiffs purchased insurance from [the agent] for several years and followed his advice on insurance matters is insufficient to create a heightened duty." (*Ibid.*)

In *Fitzpatrick, supra*, 57 Cal.App.4th 916, the plaintiffs claimed the insurer held its agents out as experts in giving advice to clients regarding coverage, and advertised that its agents could perform a formal family insurance checkup; the plaintiffs asserted this was essentially what the agent had done for them. (*Id.* at p. 928.) The court rejected the holding out theory. There was no evidence the plaintiffs saw or relied on the brochure. Further, "even a cursory reading of that brochure makes clear that it is far from a 'holding out' of special expertise; rather, and in very bland terms, it suggests that the insured ask himself or herself—and perhaps then the agent—about additional insurance needs." (*Id.* at p. 929.)

In contrast, in *Williams v. Hilb, Rogal & Hobbs Ins. Services of California, Inc.* (2009) 177 Cal.App.4th 624, the court found the "holding out" exception applied. The plaintiffs opened a Rhino Linings dealership and sought insurance for it through defendant Thaw, an insurance agent they understood had a custom-made insurance package specific to the Rhino Linings operation. (*Id.* at pp. 627-628.) When the

14

plaintiffs contacted Thaw, she told them a meeting would not be necessary because she was very familiar with Rhino Linings dealerships and was an expert on what was necessary to satisfy their insurance needs. (*Id*. at p. 628.) She offered the plaintiffs a program designed specifically for Rhino Liners dealers. (*Ibid*.) The plaintiffs completed an application, leaving the coverages portions blank; Thaw selected the insurance coverages and submitted the application. (*Ibid*.) After an employee was injured, the plaintiffs discovered the policy omitted coverage for workers' compensation. (*Id*. at p. 629.) The trial court found Thaw "'obviously acted as more than an ordinary agent,' and held herself out as having expertise with respect to the insurance needs of Rhino Linings dealerships." (*Id*. at p. 634.) The appellate court concluded "there was plenty of evidence … to support that finding," and upheld the judgment in favor of the plaintiffs. (*Id*. at pp. 637, 644.)

In *Kurtz, supra,* 12 Cal.App.4th 1249, the court found the plaintiffs adequately alleged a special duty based on holding out the insurance broker as having special expertise. There, an employer sought group insurance for its employees from brokers who held themselves out as experts in the field. (*Id*. at pp. 1254-1255.) In reliance on the brokers' advice, the employer signed a TEFRA[5] certificate erroneously representing the group plan was not subject to Medicare. (*Id*. at p. 1255.) The insurer sued to rescind the group policy based on misrepresentation. (*Ibid*.) The employer cross-complained against the brokers. The court concluded the cross-complaint adequately alleged facts that, if true, "would establish that [the brokers] entered into a relationship with [the insured] which gave rise to a duty of care, including a special duty assumed when they held themselves out as experts on TEFRA." (*Id*. at p. 1257.)

Plaintiffs point to no evidence in the record that Harless held himself out to be more than an ordinary agent or an expert in any particular field of insurance. They cite

---

[5]     Tax Equity and Fiscal Responsibility Act of 1982, 42 U.S.C. § 1395y; TEFRA.

no evidence in the record that Harless represented he had any special expertise as an insurance agent. Plaintiffs simply assert that he offered them a comprehensive review of all of their insurance policies. Like the brochure in *Fitzpatrick* inviting insureds to ask about additional insurance needs, this invitation to Harless's clients to have their insurance policies reviewed did not constitute a holding out of the agent as an expert in any particular field of insurance.

Plaintiffs pursued their action on the theory defendants owed them a general duty of care as their insurance agent to advise them of the availability of higher UM/UIM coverage limits or to procure for them UM/UIM coverage with limits equal to the limits of their bodily injury liability coverage. Generally, no duty is imposed on an insurance agent to volunteer information about the availability of additional coverage, to advise the insured to procure additional or different coverage, or to point out to the insured the advantages of additional coverage. (*Fitzpatrick, supra*, 57 Cal.App.4th at p. 927.) The three exceptions to this general rule recognized by *Fitzpatrick* were not pled or argued in the trial court, and the jury made no findings related to them. They are not properly before this court and, if they were, we would conclude that plaintiffs have not established that any of the exceptions applied or imposed a duty on Harless to advise of, recommend, or procure for plaintiffs higher limits of UM/UIM coverage. The trial court properly granted the motion for judgment notwithstanding the verdict on the ground defendants owed no duty to plaintiffs to advise them of the availability of higher UM/UIM limits or to procure for them a policy with UM/UIM limits matching their liability limits.

## III. Other Theories

Plaintiffs assert defendants had a duty to disclose to them a conflict of interest, "because failure to do so is a misrepresentation of the nature of the product." The conflict they identify is that liability insurance costs six times as much as UM/UIM, so there was a "built-in incentive to sell more liability limits and less UM/UIM limits." This

16

theory of liability was not litigated in the trial court, is not supported by any citation of authority in plaintiffs' brief,[6] and is based on allegations of misrepresentation. The misrepresentation cause of action was dismissed and never submitted to the jury. Therefore we decline to address this theory.

Plaintiffs also argue that "[a]n inexperienced and unsupervised insurance agent should be liable to an insured when the agent knows that the insured is detrimentally relying on the advice of the agent." This theory of liability also was not litigated in the trial court, is not supported by the citation of any authority supporting the existence of a heightened duty based on inexperience or lack of supervision, and is based on allegations of misrepresentation. We decline to address this theory of duty as well.

In their reply brief, plaintiffs argue that, because there was conflicting evidence regarding whether Harless's actions triggered a duty to the insureds under any of the exceptions set out in *Fitzpatrick,* the trial court's determination that the exceptions did not apply was based on an impermissible reweighing of the evidence. Additionally, they assert the trial court erred in deciding the motion for judgment notwithstanding the verdict based on its recollection of the evidence at trial, due to the unavailability of the reporter's transcript. Neither of these contentions was presented in plaintiffs' opening brief. "'A point not presented in a party's opening brief is deemed to have been abandoned or waived. [Citations.]' [Citation.]" (*Wurzl v. Holloway* (1996) 46 Cal.App.4th 1740, 1754, fn. 1.) Accordingly, we will not address these points.

---

**6**    "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citation.]" (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852, fn. omitted.)

17

## *DISPOSITION*

The judgment is affirmed.  Defendants are entitled to their costs on appeal.


_____
HILL, P. J.

WE CONCUR:


_____
CORNELL, J.


_____
GOMES, J.