Filed 3/19/15  Sanchez v. GEICO Indemnity CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD SANCHEZ,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>GEICO INDEMNITY COMPANY,<br><br>Defendant and Respondent. | H040156<br>(Santa Clara County<br>Super. Ct. No. 1-12-CV222323)<br><br><br>ORDER MODIFYING OPINION |

THE COURT:

It is ordered that the opinion filed on March 16, 2015, be modified as follows:

1.      On page 6, the first full paragraph, the first sentence, beginning "The trial court denied," delete the word "denied" and replace it with "granted" so the sentence reads:

The trial court granted the motion.

There is no change in the judgment.

_____          _____
Date                                                                Mihara, J.

                                                                       _____
                                                                       Elia, Acting P. J.

                                                                       _____
                                                                       Bamattre-Manoukian, J.

Filed 3/16/15 (unmodified version)
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RICHARD SANCHEZ,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>GEICO INDEMNITY COMPANY,<br><br>    Defendant and Respondent. | H040156<br>(Santa Clara County<br>Super. Ct. No. 1-12-CV222323) |

Plaintiff Richard Sanchez suffered personal injuries and property damage in a motorcycle accident with an underinsured driver. His insurance carrier, defendant GEICO Indemnity Company, denied his claim for underinsured motorist coverage. Sanchez brought a coverage lawsuit against GEICO, asserting various causes of action including breach of contract, bad faith, and fraud. The trial court granted summary judgment for GEICO.

Sanchez appeals from the judgment. He contends that the trial court erred in granting summary judgment because "there are triable issues of fact that [GEICO] promised maximum coverage on [Sanchez's] motorcycle" and failed to provide it. We affirm.

## I. Background

Sanchez insured his Honda motorcycle with GEICO in 2007. He selected bodily injury coverage limits of $100,000/$300,000, property damage coverage limits of $50,000, and uninsured and underinsured motorist bodily injury limits of $15,000/$30,000. In April 2007, Sanchez signed GEICO's "California Uninsured Motorist Bodily Injury (UM & UND) Coverage" form (the waiver form). The form explained that California law requires insurers to offer their policyholders uninsured motorist bodily injury coverage with limits equal to but not exceeding the policyholder's bodily injury liability limits, up to a maximum of $30,000/$60,000. The form informed Sanchez, "You may select a higher limit of UM & UND, up to $100,000/$300,000. You may also reject the coverage entirely or select UM & UND coverage less than your [bodily injury liability] limits, but not less than the minimum limit of $15,000/$30,000." The waiver form reflects that Sanchez selected the minimum limits. By signing the waiver form, Sanchez affirmed that he wanted uninsured and underinsured motorist bodily injury coverage limits of $15,000/$30,000, which were lower than what California law otherwise requires insurers to provide. (Ins. Code, § 11580.2, subds. (a)(1), (m), (n).)

The signature block on the form included a provision stating, "I affirm that the coverages mentioned on this form have been explained to me. I understand that my selections apply to all motorcycles (as defined in my contract) on my policy. These selections apply to each subsequent renewal, reinstatement, substitute, amended, altered, modified, transfer or replacement policies with this company unless I notify GEICO Indemnity in writing."

Two and a half years after he obtained the policy, Sanchez purchased a Kawasaki motorcycle. On September 12, 2009, he telephoned GEICO to have the Kawasaki added to his existing motorcycle policy. The "Policy Log" for his policy, which reflects entries made by GEICO employees contemporaneously with actions taken, does not show that

2

Sanchez requested any changes to the existing coverage on his Honda motorcycle when he added the Kawasaki to his policy.

GEICO e-mailed a "California Proof of Financial Responsibility" insurance card and a "Verification of Coverage" for the Kawasaki to Sanchez on September 12, 2009. It sent the documents to the wrong e-mail address. GEICO sent the documents to the correct e-mail address on September 17, 2009.

On September 13, 2009, GEICO mailed proof of insurance on the Kawasaki, a policy endorsement declaration for the Honda and the Kawasaki, and a customer feedback survey form to Sanchez at his residence. The policy endorsement declaration confirmed bodily injury liability coverage limits of $100,000/$300,000, property damage liability coverage limits of $50,000, and uninsured and underinsured motorist bodily injury liability coverage limits of $15,000/$30,000 on each of the motorcycles. Thereafter, Sanchez made premium payments on the amended policy.

On February 23, 2010, GEICO mailed policy renewal documents to Sanchez at his residence. The transmittal letter stated, "Please take a moment to review the package to make sure you agree with the limits of liability and coverages shown." The declarations page similarly stated, "Please verify that the coverages you requested are accurately reflected on your policy Declaration sheet. Other coverages and limits may also be available. Enclosed you will find a form that will assist you in making any needed changes to the Uninsured Motorist Coverages shown." The policy renewal documents reflected no changes to the existing coverage limits on Sanchez's two motorcycles. He renewed the policy and made a premium payment on March 27, 2010.

In May 2010, Sanchez suffered property damage and personal injuries in a motorcycle accident with an underinsured motorist. Sanchez settled with the underinsured motorist for $25,000, which was $10,000 more than the underinsured driver's policy limit. Sanchez submitted a claim for underinsured motorist coverage to GEICO. GEICO denied the claim because Sanchez's $15,000 underinsured motorist

3

coverage limits were extinguished by the $25,000 he received from the underinsured driver's insurance company.

Sanchez sued GEICO in 2012. In his third amended complaint, he alleged that he telephoned GEICO on September 12, 2009, about adding the Kawasaki to his existing policy and said that he wanted the "'maximum coverage'" for both motorcycles. Sanchez alleged that the GEICO sales representative told him he could get maximum coverage on the Honda but not on the Kawasaki since it was "so old." Sanchez averred that he "reasonably and actually relie[d] on the oral promise of maximum coverage because of [GEICO's] reputation and track record with him" and because "his rates thereafter changed."

In deposition, Sanchez could not recall whether he told the GEICO sales representative that he wanted "full coverage" or "maximum coverage" on his motorcycles. He testified that "[t]o me they are both the same." He explained that "[t]o me, full coverage means bodily injury, my bike being replaced and from there, if I were to hurt somebody else, they would be covered. If I had an accident I would be covered. That is what it means." Sanchez said the agent told him he could not get full coverage on his Kawasaki because "it was old and it was used." He said the sales representative told him at the end of the conversation that he had full coverage on the Honda motorcycle. He did not recall any discussion with the sales agent about underinsured motorist coverage. He did not recall the agent making any representation about the amount of underinsured motorist coverage or "saying anything about that . . . ." Sanchez took no notes during the conversation on September 12, 2009. No one listened in, although his friend Barbara Crum "was around at the time" and may have heard some portion of what Sanchez said during the conversation.

Sanchez did not recall receiving the policy documents that GEICO e-mailed and mailed to him in September 2009 and February 2010. However, he did not deny that he received them. He acknowledged that he produced one of those documents in response

4

to discovery. He conceded in his opposition to GEICO's summary judgment motion that he "received various insurance documents from [GEICO]" after the Kawasaki was added to his policy.

Sanchez testified that it was not his custom and practice to read documents from GEICO. He would "scan" them but "would not read every word" because he "took the agent's word on it that I would have coverage, the max coverage I could get on this bike. I was making my monthly payments. A lot of these things that are in here just in the policy in general I don't understand what is in there." "When it says limits and deductible I don't know what that means." "Uninsured motorist that wasn't explained to me by the agent. . . . He didn't explain much except what my payments would be and . . . but I requested max or full coverage."

GEICO moved for summary judgment on Sanchez's complaint. GEICO argued that Sanchez was bound by the clear and conspicuous terms of the coverage declarations, that his failure to read the policy was not a defense, and that his alleged request for "'full'" or "'maximum'" coverage was too non-specific and ambiguous to impose a duty on GEICO to suggest or to provide higher coverage limits.

Sanchez argued in opposition that there were triable issues of fact because among other things (1) an "Adjustment Customization+" notation in GEICO's records created a reasonable inference of full coverage on the Honda; (2) GEICO promised and then failed to produce a tape recording of its September 12, 2009 telephone conversation with Sanchez; (3) GEICO failed to offer any testimony from the agent denying that GEICO promised him full coverage; (4) a GEICO agent admitted to a "'glitch'" in its system; and (5) GEICO's attorney told him the company made a mistake and suggested he sue GEICO. Sanchez submitted his own declaration, a declaration from his daughter, and a declaration from Crum in opposition to the motion. Sanchez's daughter declared that he was seriously injured in the accident, that she contacted GEICO to report it, and that Sanchez was unable to work for about two months after the accident. Crum declared that

5

she recalled Sanchez telling her before the accident "that he purchased full coverage on the Honda."

The trial court denied the motion. In a three-page order, the court ruled that Sanchez's "non-specific and ambiguous statements that he wanted 'full' or 'maximum' coverage" were "insufficient as a matter of law to create an obligation on [GEICO's] part to have increased the amount of underinsured motorist coverage ('UIMC') on [Sanchez's] Honda motorcycle beyond amounts previously maintained by him." The court concluded that "[Sanchez's] lack of a targeted inquiry towards [GEICO's] agent to increase such coverage defeats his assertion that the agent should have known that he wanted more than the previously obtained $15,000 in UIMC on the Honda." "Absent such a duty, [Sanchez's] negligence claims fail." Sanchez's fraud claim failed because he "fail[ed] to submit evidence which demonstrates a triable issue of material fact with respect to whether he discussed UIMC on the Honda with the agent." His misrepresentation claim failed because "there can be no misrepresentation of UIMC with regard to the Honda when it was not even discussed."

The court ruled that Sanchez's remaining claims for breach of oral contract, bad faith, reformation, and estoppel also failed. Those claims were "predicated on the notion that he is not bound [by] the express terms of the policy." GEICO's evidence "demonstrate[d] that: no changes were requested by [Sanchez] with regard to the UIMC limits on the Honda on September 12, 2009 [citation]; [Sanchez] was mailed policy documents clearly and conspicuously evidencing $15,000/$30,000 uninsured motorist coverage/UIMC on the Honda in September 2009 and February 2010 [citation]; the policy declarations sent in February 2010 advised [Sanchez] to verify that the amounts of coverage he requested were accurately reflected on the declaration sheets [citation]; [Sanchez] did not object to the coverage or limits [citation]; and [Sanchez] accepted the terms of his policy by making payments toward his premium [citation]. [Sanchez] fails to demonstrate a triable issue of material fact as to whether he received and/or objected to

6

the clear and unambiguous terms of his policy.  Consequently, [Sanchez's] remaining claims fail."  The court entered judgment for GEICO.  Sanchez filed a timely notice of appeal.

## II.  Discussion

### A.  Standard of Review

"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)  "[T]he party moving for summary judgment bears the burden of persuasion that there are no triable issues of material fact and that [the moving party] is entitled to judgment as a matter of law."  (*Id.* at p. 850.)  The moving party "bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact."  (*Ibid.*)  "A prima facie showing is one that is sufficient to support the position of the party in question."  (*Aguilar*, at p. 851.)

"[A] 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.  The plaintiff . . . may not rely upon the mere allegations or denials' of his 'pleadings to show that a triable issue of material fact exists but, instead,' must 'set forth the specific facts showing that a triable issue of material fact exists as to that cause of action or a defense thereto.'  [Citation.]"  (*Aguilar*, *supra*, 25 Cal.4th at p. 849.)

7

"'"Appellate review of a ruling on a summary judgment or summary adjudication motion is de novo."'" (*Food Pro Internat., Inc. v. Farmers Ins. Exchange* (2008) 169 Cal.App.4th 976, 993.) Although our review is de novo, "it is limited to issues which have been adequately raised and supported in [the appellant's] brief." (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 466, fn 6.) "It is the duty of counsel by argument and the citation of authorities to show that the claimed error exists." (*In re Estate of Randall* (1924) 194 Cal. 725, 728.) An appellate brief must "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority." (Cal. Rules of Court, rule 8.204(a)(1)(B).) "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived. [Citations.]" (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

### B. Sanchez's Contentions

Sanchez does not challenge the sufficiency of GEICO's initial showing on the motion. Thus, he has forfeited any argument that GEICO did not satisfy its initial burden to show that one or more elements of each of Sanchez's claims could not be established or that there was a complete defense to each. (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1084.) Accordingly, we proceed directly to his contention that he raised "triable issues of fact that [GEICO] promised maximum coverage on his motorcycle."

### 1. Negligence and Gross Negligence

Sanchez argues that "by promising to provide maximum coverage, [GEICO] undertook a duty to provide the $100,000/$300,000 of Uninsured Motorist Coverage . . . ." The contention is relevant to his negligence and gross negligence claims because duty is an essential element of each. (*Ahern v. Dillenback* (1991) 1 Cal.App.4th 36, 42 (*Ahern*); *Frittelli, Inc. v. 350 North Canon Drive, LP* (2011) 202 Cal.App.4th 35,

8

52.)  Sanchez has not identified what triable fact issues remain with respect to these causes of action.  We find none.

"[A]s a general proposition, an insurance agent does not have a duty to volunteer to an insured that the latter should procure additional or different insurance coverage." (*Fitzpatrick v. Hayes* (1997) 57 Cal.App.4th 916, 927 (*Fitzpatrick*).)  "The rule changes, however, when . . . there is a request or inquiry by the insured for a particular type or extent of coverage . . . ." (*Ibid.*)  "An insurance agent has an 'obligation to use reasonable care, diligence, and judgment in procuring insurance requested by an insured.' [Citations.]" (*Desai v. Farmers Ins. Exchange* (1996) 47 Cal.App.4th 1110, 1119 (*Desai*).)  However, the request must be sufficiently "targeted" or "specific" before an insurance agent will be held to have undertaken such an obligation.  (*Fitzpatrick*, at pp. 928-929.)  "[I]n the ordinary case, 'the onus is . . . squarely on the insured to inform the agent of the insurance he requires.'" (*Wallman v. Suddock* (2011) 200 Cal.App.4th 1288, 1309 (*Wallman*).)

*Ahern* and *Fitzpatrick* are instructive.  The plaintiffs in *Ahern* told their insurance agent that they wanted an overseas automobile policy that provided "full coverage or 'the best coverage that exists.'" (*Ahern*, *supra*, 1 Cal.App.4th at p. 40.)  They made a claim under the policy after Mrs. Ahern suffered injuries in a hit and run collision with an unidentified and uninsured motorist in France.  The insurer denied the claim.  The Aherns sued the agent and the insurer for negligence.  (*Id.* at p. 41.)  The appellate court affirmed summary judgment for the defendants.  The court held that the agent did not assume a duty to procure uninsured motorist coverage for the Aherns or to advise them of its availability where the undisputed evidence showed that "Joan Ahern was generally unaware of uninsured motorist coverage and the subject did not come up" when she and her husband purchased the policy.  (*Id.* at p. 42.)

The plaintiffs in *Fitzpatrick* sued their insurance agent and the insurer for negligence after a serious accident with an underinsured motorist left them with expenses

9

that exceeded their coverage limits. (*Fitzpatrick*, *supra*, 57 Cal.App.4th at p. 918.) They contended that their longtime agent knew that they "generally wanted the upper limits of coverage" yet failed to advise them that they could obtain a personal umbrella policy at little additional cost. (*Id.* at pp. 927-928.) They argued that they " 'relied on' " the agent to advise them about adequate coverage, " 'and he led [them] to believe that the automobile coverage that was previously carried was fine.' " (*Id.* at p. 928.) The appellate court affirmed summary judgment for the defendants. The court observed that the Fitzpatricks' "conclusory statement" that they relied on the agent's advice lacked "any allegation concerning any sort of specific inquiry" to the agent "much less specific advice in the opposite direction." (*Ibid.*) The lack of "any sort of targeted inquiry by [the Fitzpatricks] or advice by [the agent]" defeated the Fitzpatricks' claim that the agent knew or should have known that they wanted a personal umbrella policy. (*Id.* at pp. 928-929; see also *Wallman*, *supra*, 200 Cal.App.4th at pp. 1311-1312 ["Plaintiffs' vague requests for insurance that would protect them in the event of 'any possible lawsuit that could happen in the future' " were insufficient to apprise the agent that plaintiffs "wanted excess insurance for past years or for properties they no longer owned."].)

We find Sanchez's alleged request for "full" or "maximum" coverage analogous to the vague and conclusory requests in *Ahern*, *Fitzpatrick*, and *Wollman.* Sanchez presented no evidence that he discussed the issue of underinsured motorist coverage with the GEICO sales representative. It was undisputed that the agent did not undertake to explain what full uninsured and underinsured motorist coverage would be. Further, the "Policy Log" for Sanchez's policy reflects no request for any change in coverage on his Honda motorcycle. On this record, Sanchez's alleged request for "full" or "maximum" coverage was not sufficiently targeted or specific to impose a duty on the GEICO sales representative to procure additional underinsured motorist coverage. (*Fitzpatrick*, *supra*, 57 Cal.App.4th at pp. 928-929.)

10

Sanchez argues that his "targeted request for maximum coverage" on the Honda was "similar to the plaintiff's coverage request for 100% coverage in *Desai . . . .*"  We cannot agree.  *Desai* was before the court on appeal from the sustaining of a demurrer without leave to amend.  The appellate court reversed the order of dismissal, holding that Desai's complaint alleged a viable claim against Farmers for its agent's negligent failure to deliver the agreed-upon coverage.  (*Desai*, *supra*, 47 Cal.App.4th at p. 1121.)  The complaint alleged that he sought to purchase earthquake, fire, and hazard insurance on his property.  (*Id.* at p. 1114.)  He told the agent that he wanted 100 percent coverage for the cost of repairing or replacing improvements to the property, including increases for inflation.  (*Ibid*.)  The agent told him that Farmers offered such insurance.  She orally represented that the policy provided " '100 [percent] coverage for the costs of repairs and/or replacement of the improvements to the property including any and all increases in costs of repair or rebuilding in the event of a loss.' "  (*Ibid*.)  Desai purchased the policy based on her representations.  (*Ibid*.)  When he later suffered $546,757 in losses from an earthquake and a fire, Farmers refused to pay more than the $158,734 policy limit.  (*Id*. at pp. 1114-1115.)

*Desai* is easily distinguished.  Sanchez's alleged request for "full coverage" bears no resemblance to Desai's targeted request.  Desai demanded a specific type and amount of coverage on his property.  The agent represented that the policy provided exactly what Desai requested.  Sanchez, by contrast, made only a vague and conclusory request for "full coverage."  The GEICO agent made no representation at all.  Sanchez's reliance on *Desai* is misplaced.

Sanchez argues that GEICO "failed to offer any testimony from the agent denying that it promised [Sanchez] full coverage."  He does not explain why this fact is significant.  We do not think it is.  It was undisputed that the agent did not undertake to explain what full uninsured and underinsured motorist coverage would be.  The subject of uninsured and underinsured motorist coverage was not even discussed.  On this record,

11

Sanchez's vague and conclusory request for "full coverage" did not raise a triable issue of fact about the GEICO agent's alleged negligent failure to procure the coverage Sanchez claims he requested.  (*Fitzpatrick*, *supra*, 57 Cal.App.4th at p. at pp. 928-929.)

## 2.  Fraud and Misrepresentation

Sanchez alleged in his complaint that GEICO "promised and represented . . . that maximum coverage would be placed on his Honda motorcycle."  This allegation is relevant to his fraud and misrepresentation claims because a false representation is an essential element of each claim.  (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1255; *Hackethal v. National Casualty Co.* (1987) 189 Cal.App.3d 1102, 1111.)  Sanchez's argument on appeal consists of two bare assertions:  (1) that "[i]t is undisputed . . . GEICO . . . represented in writing it was able to provide a 'maximum' of $100,000/$300,000 of Uninsured Motorist coverage to . . . Sanchez . . . ." and (2) that "by promising [to] provide maximum coverage, [GEICO] . . . engaged in a misrepresentation."  A record citation to the waiver form that he signed and citations to *McNeill v. State Farm Life Ins. Co.* (2004) 116 Cal.App.4th 597, 603 (*McNeill*) and *Butcher v. Truck Ins. Exchange* (2000) 77 Cal.App.4th 1442, 1462 (*Butcher*) follow these assertions.  Sanchez does not analyze the cited cases or provide any reasoned argument on how those cases apply to this case.  "Simply hinting at an argument and leaving it to the appellate court to develop it is not adequate."  (*Cryoport Systems v. CNA Ins. Cos.* (2007) 149 Cal.App.4th 627, 633 (*Cryoport*).)

The meager hints that Sanchez provides do not reveal what his argument might be.  In *McNeill*, the court reversed a trial court order sustaining a demurrer to the plaintiff's complaint for fraud.  (*McNeill*, *supra*, 116 Cal.App.4th at p. 603.)  In doing so, the court observed generally that an insurance company's agent may be personally responsible for an intentional misrepresentation.  (*Ibid*.)  In *Butcher*, the court reversed summary judgment in favor of an insurer.  It did so because the plaintiffs presented evidence that they specifically asked the agent to obtain a policy that covered liability for personal

injury arising out of malicious prosecution, and the agent negligently misled them into thinking that he had done so. (*Butcher*, *supra*, 77 Cal.App.4th at pp. 1446-1448.) That evidence raised a triable issue of material fact that precluded summary judgment. (*Id*. at p. 1465.)

Unlike in *Butcher*, Sanchez presented no evidence that raised a triable issue of fact. To the extent he argues that the waiver form contained a misrepresentation, we reject the contention. The form explained, "You may select a higher limit of UM & UND, up to $100,000/$300,000. You may also reject the coverage entirely or select UM & UND limits less than your BI limits, but not less than the minimum limit of $15,000/$30,000." This is an explanation, not a representation. Sanchez clearly indicated his selection of the minimum $15,000/$30,000 limits. By signing the form, he affirmed that "the coverages mentioned in this form have been explained to me." He also affirmed his understanding that his selection would apply to renewals unless he notified GEICO in writing. On this record, the mere availability of higher limits does not create a triable issue of fact.

### 3. Breach of Contract and Bad Faith

Sanchez alleged in his complaint that he and GEICO had an oral contract "whereby [GEICO] agreed to increase [his] motorcycle coverage to the maximum available." He further alleged that GEICO breached that contract "by failing to provide the maximum coverage." On appeal, he asserts that "there are triable issues of fact that [GEICO] promised maximum coverage on his motorcycle." We disagree.

"In determining whether the papers show that there is no triable issue . . . the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) "An inference is a deduction of fact that may logically and reasonably be drawn from another fact or group of facts found or otherwise established in the action." (Evid. Code, § 600, subd. (b).) " 'When

13

opposition to a motion for summary judgment is based on inferences, those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.' [Citation.]" (*Waschek v. Department of Motor Vehicles* (1997) 59 Cal.App.4th 640, 647.) "A party may not avoid summary judgment based on mere speculation and conjecture . . . ." (*Compton v. City of Santee* (1993) 12 Cal.App.4th 591, 595-596.)

In the four-page section of his brief entitled "APPLYING LAW TO CASE FACTS," Sanchez mentions various items of evidence that he asserts raise triable issues of fact. GEICO counters that much of this evidence is inadmissible and/or irrelevant and that speculative inferences drawn from such evidence cannot be used to manufacture disputed issues of material fact. We agree with GEICO.

One of Sanchez's assertions is that "[GEICO's] records admit to an 'Adjustment Customization+' on 9/12/09 . . . which corroborates [his] testimony that he requested a change in coverage on the Honda." He does not develop this argument further. The GEICO transaction summary that he cites sheds no light on what the "Adjust Customization+" entry might mean. Any suggestion that the brief entry supports an inference that Sanchez asked the agent to increase the coverage on his Honda is pure speculation. " 'Speculation, however, is not evidence' that can be utilized in opposing a motion for summary judgment. [Citation.]' " (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 99 (*Knapp*).)

Sanchez conclusorily asserts that GEICO "promised to provide its tape recording and then failed to produce it" and similarly "failed to produce its Diary notes from May 2, 2010 until June 27, 2011 . . . ." To the extent he argues that GEICO "intentionally concealed or destroyed evidence" and that we should therefore "infer that it would have been unfavorable to [GEICO]," we reject the contention. GEICO submitted evidence that it does not record all telephone conversations. Calls are recorded at random, and the recordings of those calls are saved for only 30 days. Sanchez

14

acknowledged in deposition that the GEICO agent advised him that "she couldn't find the . . . recordings because they didn't keep them that long." GEICO submitted evidence that it produced its " 'Activity Log' " (which Sanchez calls "Diary notes") with some portions redacted to protect attorney-client privilege and confidentiality. It is not "reasonably deducible" from this evidence that GEICO concealed or destroyed evidence. (Code Civ. Proc., § 437c, subd. (c).) We reject Sanchez's suggestion to the contrary.

Sanchez asserts that "[GEICO] admitted to a 'glitch' in its system as an explanation for a failure to bind the maximum coverage . . . ." He claims that "[t]his admission assists in creating a triable issue of fact of coverage." Not so. Sanchez conceded in deposition that the GEICO agent he spoke with sometime after the accident did not say that his lack of coverage was caused by a computer glitch. In opposition to GEICO's summary judgment motion, Sanchez subsequently declared that the agent told him "there must have been a glitch in the computer system" and "indicated this caused the failure to bind the promised coverage." There are two reasons why Sanchez's declaration does not satisfy his burden to raise a triable issue of fact. First, the agent's alleged statement that there "must have been" a glitch is speculative on its face. Such speculation cannot create a triable issue of fact. (*Knapp*, *supra*, 123 Cal.App.4th at p. 99.) Second, Sanchez's declaration that the agent "indicated" that the computer glitch "caused the failure to bind the promised coverage" contradicts his prior sworn deposition testimony. It is "well-settled" that " '[a] party cannot create an issue of fact by a declaration which contradicts his prior [discovery responses].' " (*Benavidez v. San Jose Police Dept.* (1999) 71 Cal.App.4th 853, 860-861; see *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22, disapproved on other grounds in *Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 944.)

Sanchez next asserts that "[GEICO's] attorney told [him] that GEICO made a mistake, and suggested he sue it." He claims that "[t]his admission assists in creating a

15

triable issue of fact of coverage." He does not develop the argument further. We reject it.

"[I]t is axiomatic that the party opposing summary judgment '"must produce admissible evidence raising a triable issue of fact. [Citation.]" [Citation.]' [Citation.] This requirement is black letter law . . . ." (*All Towing Services LLC v. City of Orange* (2013) 220 Cal.App.4th 946, 960 (*All-Towing*); Code Civ. Proc., § 437c, subd. (p)(2).) "Evidence containing hearsay is not admissible evidence and will not raise a triable issue defeating summary judgment." (*Stockinger v. Feather River Community College* (2003) 111 Cal.App.4th 1014, 1026-1027.)

Sanchez's testimony about what the attorney allegedly told him is hearsay. (Evid. Code, § 1200, subd. (a).) It is inadmissible unless a statutory exception to the hearsay rule applies. (Evid. Code, § 1200, subd. (b).) Sanchez appears to assume that the statement he attributes to "[GEICO's] attorney" is admissible under the party admission exception to the hearsay rule. That exception provides that "[e]vidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity . . . ." (Evid. Code, § 1220.) A "'[d]eclarant' is a person who makes a statement." (Evid. Code, § 135.) "Ordinarily, the word 'declarant' is used in the Evidence Code to refer to a person who makes a hearsay statement as distinguished from the witness who testifies to the content of the statement." (Cal. Law Revision Com. com., 29B pt. 1A West's Ann. Evid. Code (2011 ed.) § 135.) The party admission exception to the hearsay rule does not apply here.

In the declaration that he submitted in opposition to GEICO's motion, Sanchez stated that GEICO retained counsel to defend him in a personal injury lawsuit filed by Crum, who was a passenger on the motorcycle when the accident occurred. When he and his insurer-retained lawyer were preparing for deposition in the personal injury action, Sanchez "explained" to the lawyer "that [GEICO] had promised me full coverage on my

16

Honda." The lawyer "said [GEICO] make [*sic*] a mistake" and "advised me to sue [GEICO]."

It is clear from Sanchez's declaration the alleged "admission" was made by his lawyer rather than (as he now asserts) by GEICO's attorney. Sanchez's lawyer was the hearsay declarant. (Evid. Code, § 135; see Cal. Law Revision Com. com., 29B pt. 1A West's Ann. Evid. Code, *supra*, § 135.) There is no evidence that Sanchez's lawyer in the personal injury action is a party to this action in either his individual or his representative capacity. (Evid. Code, § 1220.) Sanchez does not attempt to argue that he is. Thus, he has not established that the lawyer's alleged statements are admissible under the party admission exception to the hearsay rule.

Even if he could do so, Sanchez has not provided a foundation to support admitting the statements. (Evid. Code, § 403.) "The proponent of the proffered evidence has the burden of producing evidence as to the existence of the preliminary fact, and the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when: [¶] . . . [¶] . . . [t]he preliminary fact is the personal knowledge of a witness concerning the subject matter of his testimony . . . ." (Evid. Code, § 403.) Sanchez submitted no evidence that the lawyer appointed to represent him in the personal injury action had any knowledge about the instant case (apart from what Sanchez told him) that would allow him to opine that GEICO somehow made a "mistake." The lawyer's alleged statements are inadmissible for that reason as well. (Evid. Code, § 403.) It follows that those statements did not raise a triable issue of fact sufficient to defeat summary judgment. (*All-Towing*, *supra*, 220 Cal.App.4th at pp. 959-960; Code Civ. Proc., § 437c, subd. (p)(2).)

### 4. Reformation and Estoppel

The entirety of Sanchez's estoppel argument is that "estoppel also applies to afford [Sanchez] coverage." Citations to *Hartford Fire Ins. Co. v. Spartan Realty International, Inc.* (1987) 196 Cal.App.3d 1320 (*Hartford*) and *Fanucci v. Allstate Insurance Co.*

17

(N.D.Cal. 2009) 638 F.Supp.2d 1125 (*Fanucci*) follow the assertion. Neither case helps Sanchez.

In *Hartford*, the court held that an insurer's postaccident defense of its insured under a reservation of rights did not estop it from later denying coverage under a policy that all parties agreed excluded coverage. (*Hartford*, *supra*, 196 Cal.App.3d at pp. 1327-1328.) *Hartford* bears no resemblance to this case.

In *Fanucci*, the federal district court denied the defendant insurer's motion for summary judgment or partial summary judgment. Fanucci alleged that his insurer was estopped to deny uninsured motorist coverage under an umbrella policy that did not provide such coverage. In opposition to the motion, she submitted evidence that the agent who sold her father the policy misrepresented that it would provide uninsured motorist coverage, and her father relied on that representation. (*Fanucci*, *supra*, 638 F.Supp.2d at pp. 1141, 1144.) This evidence raised a triable issue of fact precluding summary judgment. Here by contrast, it was undisputed that the GEICO agent made no representations about uninsured and underinsured motorist coverage. It was undisputed that the subject was not even mentioned during Sanchez's September 12, 2009 conversation with the agent.

### III. Disposition

The judgment is affirmed.

18

 

                                         _____

                                         Mihara, J.

WE CONCUR:

_____

Elia, Acting P. J.

_____

Bamattre-Manoukian, J.

19